Bell *v.* Hutchings *et al.*

1. Upon the trial of a suit in equity to rescind a sale of land, where specific questions of fact were submitted to the jury, it was improper practice for the court to submit also, over objection of counsel, the question of whether the sale should be rescinded or not, that being for the court to decide upon the special facts found by the jury in answer to the other questions submitted. But inasmuch as the facts thus found by the jury are sufficient to authorize the decree made by the court, the judgment will not be reversed on this ground.

2. Polling the jury as to their verdict in a civil case is a matter of discretion with the trial judge which this court will not undertake to control; and he may grant a motion to poll them upon their answer to a specific question, as well as upon the whole verdict, but his refusal to do so is not ground for reversal.

3. Under the contract of sale, the plaintiffs were to be paid for the land partly in money and partly in other land to be conveyed to them by the defendant. The jury, in answer to questions submitted, found that the defendant could not make a good title to the land he agreed to convey, and could not fully compensate the plaintiffs for the loss of the land; that at the time of contracting no valuation was placed upon the plaintiffs' land; and that the conduct of the defendant constituted a fraud upon the plaintiffs. *Held,* that the decree for rescission was proper.

(a) An offer by the defendant to convey other lands of the same kind as those he had agreed to convey was not a compliance with his contract.

4. In addition to the parts of the record specified by the plaintiff in error in his bill of exceptions as material to a clear understanding of the errors complained of, certain portions of the evidence were sent up on the petition of the defendants in error. It appearing to this court that this evidence is superfluous and immaterial, it is directed that the cost of bringing it up be taxed against the defendants in error.

January 19, 1891. By two Justices.

Contracts. Rescission. Equity. Practice. Jury. Before Judge Gober. Polk superior court. August term, 1890.

Mrs. Hutchings and Mrs. Camp by their petition alleged: In October, 1886, S. B. Bell bargained with them to purchase their farm in Polk county for $12,000, to be paid as follows: $5,000 cash on taking possession;

$1,400 in twelve months with 8 per cent. interest; titles to eleven lots, specified by numbers, in the twelfth district of originally Appling .county, containing 5,390 acres of well timbered land, these lots being valued in the purchase at $5,000; and titles to fifteen acres of land in Florida, valued at $600. Relying upon his good faith and ability to comply with the contract, they allowed him to take full possession of the farm about December 15, 1886. He failed to make the cash payment, postponing it from time to time upon various excuses, and has only paid $1,800. Upon full investigation made for petitioners by their agent, A. A. Camp, of the title of Bell to the lots of land in originally Appling county, they are convinced that the titles are worthless and the deeds held by Bell conveying these lands are forged and fraudulent, and that he cannot make any titles thereto under which it would be safe for them to take possession. They are informed and believe that one Garmany holds the genuine titles to seven. of the lots; they do not know who holds the title to the remaining four, but believe there are conflicting claims to them. When Bell was informed as to this matter by them, he promised to give them good titles, but he has failed to do so, and so far as they are informed and believe, is making no effort to do so. When they received convincing information that his titles were not good, they offered to modify the bargain, and in lieu of title to these lots to take from Bell his notes for $5,000, the value placed upon the lots by him in the bargain, the notes to bear interest at 8 per cent. and payable at any time set by him within five years; but he rejected this proposition, still insisting that he would give them correct titles to these lots. He has failed to pay the $5,000 cash agreed upon, and to make titles to the land in Florida, and to execute his note for the deferred payment; and they have not executed to him any deed or bond or other

obligation to convey the farm. He holds possession of the farm, is running and cultivating it, and will appropriate to his own use the crops thereon. They believe that if he is solvent, he does not own sufficient property in Georgia to satisfy any judgment or decree they might obtain against him. They pray that the contract be rescinded; that they be put in possession of the farm; for judgment against him for damages because of his failure to comply with his contract, for receiver to take charge of the crops, and for general relief, etc. By amendment they alleged: The price fixed upon the plantation by them sold to defendant, was $15,000, which they thought it was worth, and they were induced to sell it for $12,000 because they were satisfied they could so manage the fine body of pine lands offered in the trade by Bell at $5,000, as to make their plantation net them $15,000 or more. The pine lands were heavily timbered, located close to the railroad, and the timber on them could have been sawed into lumber at a great profit, and by ordinary skill and energy they could have made more than the price fixed upon them by Bell in the trade. They would not have taken the $5,000, at which these lands were valued, in cash, because they expected to make a greater sum out of the timber on them, and their getting the pine lands at the $5,000 was the main inducement to make the trade, and without it the trade would not have been consummated. At the time it was made and throughout the negotiations, Bell represented to their agent that his titles to the pine lands were perfect; and when their agent asked to see the titles, Bell told him they were in the hands of his agent who lived in Florida; and neither petitioners nor their agent had any opportunity to examine the titles until after the trade was consummated, and they relied upon the representations of Bell that the titles were perfect, and did not know until

after he was put in possession of their plantation that his titles were not good. His representation that his titles to the pine lands were good, was fraudulent and false and so known to him, and his deeds were all, or nearly all, forgeries, the titles to seven of the lots being held by others; and he is not now attempting to defend his titles. He made these false and fraudulent representations with intent to deceive and cheat them; they were material to the consummation of the trade, were believed to be true by petitioners, and were acted on by them. They tender to him all sums that have been paid to them by him, and pray that he account to them for rents for their plantation from the 1st of January, 1887.

The defendant answered: In October, 1886, he had a conversation with A. A. Camp in reference to the purchase of the farm. Camp at first asked $12,000, and defendant would not take it at this price. Camp then offered to take $10,000 for it, and defendant did not agree to this proposition. He told Camp he would trade if Camp would take 5,390 acres of pine lands, and he then proposed to give Camp $5,000 to be paid by the last of January, 1887 ; $1,400 to be paid in the winter of 1889 ; fifteen acres of land in Florida at $600 ; and the eleven lots of land in originally Appling, now Clinch and Echols counties, aggregating 5,390 acres. No price was fixed on this pine land, but he told Camp he did not know what it was worth. He did agree to take back the Florida land at $600 within two years, should it not be worth that amount in that time; and he is still willing to do so. Camp then went to see the land, made a personal inspection of it, ascertaining that similar land adjoining and in the vicinity could be bought for $100 a lot, so stated to defendant, and then accepted defendant's proposition. Up to January 12, 1887, he paid Camp for petitioners $150, and on Janu-

ary 10, 1887, the additional sum of $1,714.10. There was a mortgage of $1,800 on the land given by petitioners, which they were to take up before he would pay over the $5,000; and the final settlement was delayed by Camp in trying to hunt up and settle this mortgage. To facilitate matters, defendant finally agreed with Camp to carry the mortgage, if the mortgagee would allow it to be taken up within twelve months; the mortgagee agreed to this, and defendant then informed petitioners that he would carry the mortgage and asked that a day be set for a final settlement, which was done. When the time arrived petitioners declined to settle. They were not delayed by defendant, but he was ready at all times to pay the money, give a deed to the Florida land and the pine land, and give notes for the $1,400. He has been advised and believes that his title to the pine lands, being a full and unbroken chain from the grantee down to him, is a true and genuine title. After Camp made the second visit to the pine lands, he stated to defendant that he had heard nothing affecting the titles. Defendant is ready to pay the $5,000, less the amount paid and the amount of the mortgage and interest; he has already tendered to Camp his note for the $1,400, due December 1, 1887, and deed to the Florida land in consideration of $600, and a warranty deed to the pine land reciting a consideration of $1,100, that being its market value, and in addition the balance of the $5,000 less the mortgage and the amount paid; and he renews the tender. He is not insolvent; he sets forth various items of property owned by him in Georgia, and states that he owes no debts save the balance due on this land. Since he went on the farm he has made upon it valuable and permanent improvements to the extent of $1,225, which he claims should be allowed him, besides interest, if he be required to account to petitioners for rent. He prays

that the court decree title in him to the land he bought from petitioners, upon his compliance with the contract, which he is now ready and prepared to do, or which he will do as soon as the terms of the contract can be settled by the verdict of the jury. Camp did not ask him for deeds, but only asked for an abstract, which he got; and he could have got deeds if he had asked for them. The price of $15,000 was not fixed by petitioners upon the land, nor was any price fixed upon the pine lands which he contracted to sell them, but at the time of the trade both he, petitioners and their agent knew that these pine lands were not worth more than $100 a lot, and that lands in large quantities of equal value in every respect and of equal accessibility in the same neighborhood, could be bought for $100 per lot or less. It is not true that petitioners agreed to take $12,000 instead of $15,000 because they were satisfied they could manage the pine lands so as to make their plantation net them $15,000 or more. They never expected to realize $15,000 for their plantation by the trade. They have four of the eleven lots, and with $700 can buy seven more in the immediate vicinity of the lots he agreed to sell them, as well timbered and as convenient to the railroad; and he now offers to furnish $700, or such sum as may be necessary to purchase seven such lots, so that they may have eleven lots as good and valuable in every way as he agreed to sell them, or he offers to purchase and make titles to them to seven other lots lying near the lots above mentioned, with as good and valuable timber as the seven lots the title to which is disputed, and as near to the railroad as those lots; all of which he undertakes to do within — days from the decree, or within the same number of days from the time they will agree to accept it. It is not true that the petitioners would not have taken $5,000 for the pine lands; they knew that with $5,000 they

could have bought fifty such lots; these lands were not valued at $5,000 in the trade, and petitioners getting them was not the main inducement, nor one of the main inducements to the trade, but the main inducement was to get money with which to pay debts, and which they did get. They had had their farm on the market, had offered it for $10,000 cash, and had never made known that the getting of pine lands was a necessary part of any trade they would make, and no such information was furnished defendant in this trade. He never told Camp that the title-papers were in the hands of his agent in Florida; he had the title-papers in his possession and showed them all to Camp; and petitioners through their agent had the same opportunity to know whether or not defendant's titles were good as defendant had. He knew nothing of the validity or invalidity of the title, except through the title-papers and the assurance of the man he purchased from that the titles were good. If the titles were not good it was not known to him, and he had no reason to suppose that they were not good. He bought the lands in good faith and paid a valuable consideration therefor, and so far as he knows, his title to any of the lots was not disputed until after his trade with petitioners; and he supposed the papers were all genuine and not forged when he bought the lands and when he sold them to petitioners; the charges made by petitioners to the contrary are false; he made no attempt to deceive or cheat them, nor did he make any representations as to the titles, but all parties relied on the paper titles shown to and examined by Camp, and on the inquiries and information obtained by Camp on his visits to the lands. Defendant is willing and able to pay the money he undertook to pay, and to pay the value of all the lots to which his title has failed or is defective, or to pay the value of all the eleven lots to petitioners, or, if they

prefer, he is willing to procure and convey to them seven other lots, as above stated.

Following are the questions submitted to the jury, with their answers: "(1) Can S. B. Bell make a good title to the 5,390 acres of land in Clinch county and Echols county, mentioned in the pleadings? No. (2) Were, or not, said 5,390 acres land valued at $5,000 in the trade which is sought to be set aside by complainants in this case? No. (3) How much was said 5,390 acres land worth October 15th, 1886? $1,100. (4) Was, or not, said 5,390 acres land the principal or main inducement to complainants to enter into the trade? It was not. (5) Would, or not, the failure to get said 5,390 acres of land prevent complainants from the use and enjoyment to any material extent of the other part of the consideration they were to get under the trade? It would not. (6) Can complainants be fully compensated in money for the loss of said 5,390 acres land? We think not. (7) Did, or not, S. B. Bell practice any fraud on complainants in making the trade, or did he act in good faith? Fraud by failure of title. (8) Shall complainants take the fifteen acres land in Florida referred to in the trade, or shall Dr. Bell pay them $600? Neither one. (9) How much money has S. B. Bell paid complainants in his purchase, and when was it paid? $1,714.10, January 10, 1887; $150.00, January 12, 1887. (10) What has the place bought by S. B. Bell from complainants been worth for rent for years 1887, 1888, 1889 and 1890? $3,200. (11) What is the value of improvements put by Bell on said place since he took possession of it? $1,409.00. (12) Was any value placed by the parties in the trade on complainants' farm, and if a value was placed upon said farm, what was that value? No value. (13) Shall said trade between complainants and S. B. Bell be rescinded? It shall. We,

the jury, make the answers to the above questions our verdict." The court thereupon decreed that the trade be rescinded as prayed for in the petition; that the plaintiffs be put into possession of the property claimed; that the defendant pay them $3,200.00 for rent for 1887, 1888, 1889 and 1890, for which they should have execution; that they pay him $1,409.00 for the improvements and $1,864.10 for money paid them by him on the purchase of the land, with interest on the last named sum from January 10, 1887, at 7 per cent., to be deducted from the amount found due them as above stated; and that he have execution for any difference or excess in his favor, should there be any; and that the cost be taxed against him. For the grounds of error see the opinion.

BROYLES & SONS and F. A. IRWIN, for plaintiff in error.

BLANCE & NOYES, TURNER & GROSS and A. RICHARDSON, by brief, contra.

SIMMONS, Justice.

Mrs. Hutchings and another brought a suit on the equity side of the court to rescind a sale of land which she had made to Bell. After the evidence had been submitted, counsel for Bell presented eleven questions of fact which he asked the court to submit to the jury. Counsel for the plaintiff submitted two, one of which was, " Shall said trade between the complainants and Bell be rescinded ? " To this question counsel for Bell objected on the ground that the answer thereto would be a matter of law, and that it was a question for the court after the finding of the jury on the other questions, and not a question for the jury. This objection was overruled. The jury returned a verdict answering the questions, which will be found in the official report; and counsel for Bell moved to poll the jury as to their answer to the last question. The court declined to poll the jury as to this particular answer, but polled them

on their verdict generally ; and this was excepted to. The court then made a decree upon the finding of the jury, to which counsel for Bell objected on the ground that the facts found by the jury in answer to all the questions except the 13th, were in law inconsistent with the finding of the jury in answer to that question, and did not in law furnish cause for rescinding the contract. These are the three errors specified in the bill of exceptions filed by Bell.

1. We think it was improper practice for the court to submit the 13th question to the jury. Whether the trade should be rescinded or not was a question for the court to decide upon the other facts found by the jury. It would be useless generally to submit special questions of fact to the jury if the general question on the merits were submitted also at the same time. It is better to allow the jury to find as to special questions of fact without knowledge on their part as to the legal bearing of their findings. But in the present case, inasmuch as the special facts found by the jury in answer to the interrogatories propounded are sufficient to authorize the decree made in the case, we will not reverse the judgment on this ground.

2. There was no error in refusing to poll the jury upon any specific answer made by them to the questions propounded. The answers were not separate verdicts, but all the answers made one verdict. We do not mean to say that if the court in its discretion had seen fit to poll the jury as to any specific answers, it would have been error. Polling the jury, in a civil case, is a matter within the discretion of the trial judge, and he can grant a motion to poll them, either upon the whole verdict, or, for any sufficient reason, upon the answer to a specific question ; and we will not undertake to control his discretion upon these matters of practice.

3. As to the 3d objection, we think the facts found

by the jury in answer to the questions other than the 13th were sufficient to authorize the judge to enter a decree of rescission of the contract, and we think the answers to those questions were not inconsistent with the finding of the jury in answer to the 13th question. We find from the pleadings in the case that Mrs. Hutchings contracted to sell Bell a plantation in Polk county, and that Bell agreed to pay her $5,000 in cash, give his note for $1,400 payable in twelve months, and convey to her 5,390 acres of land in Clinch and Echols counties, and 15 acres in Florida worth $600. The jury found in answer to the questions propounded that Bell could not make a good title to the 5,390 acres in Clinch and Echols counties, and could not fully compensate her in money for the loss of this land; that he committed a fraud upon her in selling her the land when he could not make a good title to it, and that at the time of the contract no value was placed by the parties on Mrs. Hutchings' land. Taking all these facts together, we think the court was right in entering the decree for rescission. This was not a contract by Mrs. Hutchings for the sale of her land for money alone, but was a contract for its sale partly for money and partly for other land; and when the title to the land which Bell had agreed to convey her failed, it was a non-performance by Bell of his covenants with her to make her a good title to the Clinch and Echols land. She was entitled to have the land for which she had contracted, and Bell could not comply with his contract by offering her other lands of the same kind; and, as we have seen, the jury found that she could not be compensated in money for the loss of this particular land. (See Code, §2859.) For these reasons and others that might be mentioned, we affirm the judgment of the court below.

4. It appears from the record that the defendant in

error was not satisfied with the specifications of the record made by the plaintiff in error in the bill of exceptions, and petitioned the judge to have certain portions of the evidence sent up; which was accordingly done. In looking into the case we find that this evidence is entirely superfluous and immaterial, and is not necessary to a clear understanding of the case; and we therefore direct that the cost of bringing it here be taxed against the defendant in error; and if the plaintiff in error has paid it in the court below, that he have judgment therefor in that court.

*Judgment affirmed.*