103 P.2d 640

STAMBAUGH v. HAYES et al.

No. 4517.

Supreme Court of New Mexico.

June 12, 1940.

Merritt W. Oldaker, Melvin D. Rueckhaus, M. Ralph Brown, and I. F. Gallegos, all of Albuquerque, for appellants.

Dudley Cornell and Hugh B. Woodward, both of Albuquerque, for appellee.

BRICE, Justice.

This is an appeal from a judgment in favor of the appellee (plaintiff) and against the appellants (defendants) for damages because of the alleged negligent killing of plaintiff's intestate. The appellant Hayes will be styled defendant and the appellant Insurance Company will be styled Insurance Company in this opinion.

Plaintiff's intestate, while riding a bicycle at an intersection of two streets in the city of Albuquerque, was struck and killed by an automobile driven by the defendant. The defendant, it is alleged by plaintiff, was an employee of the Insurance Company, and at the time of the accident was acting in the course of his employment, whereby the Insurance Company became liable for the death of the child under the rule respondeat superior.

We find from a careful reading of the record that there is substantial evidence

to support the charge that defendant was negligent in the operation of his automobile and that such negligence was the proximate cause of the death of plaintiff's intestate.

The jury was warranted, under the facts of the case, in finding that no negligence of plaintiff's intestate was a contributing cause of his death.

■ It was not error for the trial court to poll the jury regarding their answers to special interrogatories; and to permit them, at their request, to retire and correct an answer to one which through mistake, had been written "yes," when the answer to which they had agreed was "No." Bell v. Hutchings, 86 Ga. 562, 12 S.E. 974; Bino et al. v. Veenhuizen et ux., 141 Wash. 18, 250 P. 450, 49 A.L.R. 1297 and anno. at page 1301; 64 C.J. "Trial" Secs. 864 and 866.

After pleading negligence generally the plaintiff pleaded eight specific acts of negligence on the part of defendant, one of which was, "The defendant negligently and carelessly failed to sound a horn or give other warning in approaching said intersection;" and another was " * * * the defendant wholly failed to stop or appreciably to diminish his speed at said intersection and before colliding with decedent."

■ The defendant requested the court to instruct the jury as follows: "You are instructed that the defendant, Charles E. Hayes, was under no legal duty to sound his horn, to stop his car, or to diminish his speed below the lawful rate of speed at the intersection of 6th and Marquette at the time of the accident, unless there was conflicting traffic which an ordinary prudent man would have seen."

While each party to a jury trial is entitled to an instruction on the law applicable to his theory of the facts (Southern Pacific. Co. v. Stephens, 36 N.M. 10, 6 P.2d 934), this assignment is argued as an abstract proposition of law, without reference to the facts of the case, unless we are to assume that defendant did in fact fail to sound his horn, stop or diminish his speed. But whether he did or not, the requested instruction is faulty, in limiting the precautions mentioned to cases where "there was conflicting traffic which an ordinarily prudent man would have seen." The rule is that the defendant was required to exercise that degree of care which an ordinarily prudent person would have exercised under the situation and circumstances then existing, without regard to conflicting traffic which would or could have been seen by him. Sometimes traffic is concealed by obstructions and cannot be seen; but this does not excuse the driver from taking such precautions as the exigencies of the situation require, measured by the rule mentioned.

■■ The trial court refused to give defendant's requested instruction, as follows: "In this case the defendant Charles E. Hayes claims that the bicycle ridden by the Stambaugh boy was hidden by the pick-up truck driven by Mr. Stagner. If you find that this

is correct then you are instructed that there was no legal duty on the defendant Hayes to anticipate or expect that there was a bicycle on the other side of the truck."

Defendant cites Klink v. Bany et al., 207 Iowa 1241, 224 N.W. 540, 65 A.L.R. 187 and anno. at page 192, to the effect that a driver of a motor vehicle is not legally bound to anticipate or know the intention or purpose of a person who, being in a zone of safety, suddenly and without warning enters a zone of danger and is struck by such vehicle. The case of Haire v. Brooks, 42 N.M. 634, 83 P.2d 980, illustrates the rule. But we have no such case here. The deceased was travelling in the street; and though he may have been hidden by a vehicle from defendant's view, it does not follow as a matter of law that defendant owed deceased no duty, or was not liable for the result of his own negligence, as the language of the requested instruction seems to indicate. A driver of an automobile on a busy city street must anticipate that bicycles may follow automobiles, as the latter may follow large trucks and thus be hidden from view.

■■ The trial court did not err in refusing to give to the jury the following instruction requested by plaintiff: "If you find from the evidence that the death of Charles Monroe Stambaugh resulted from an unavoidable accident, then your verdict should be for the defendants in this case."

"Unavoidable accident" has a definite legal meaning. It is an accident which is not occasioned in any degree, either directly or remotely, by want of such care or prudence as the law holds every man bound to exercise; and if the accident complained of could have been prevented by either party by means suggested by common prudence, it is not unavoidable. Orange & N. W. Ry. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973; St. Louis, etc., Ry. Co. v. Bryan, 195 Ark. 350, 112 S.W.2d 641; Murphy v. Read, 157 Or. 487, 72 P.2d 935; Harrison v. Smith, 167 Md. 1, 172 A. 273; San Pedro etc., Co. v. United States, 9 Cir., 220 F. 737.

The requested instruction containing the legal phrase "unavoidable accident," is not sufficiently definite to apprise the jury of its import, and unless followed by a definition it is misleading and should not be given. Godfrey v. Kansas City Light & Power Co. 213 Mo.App. 139, 247 S.W. 451. Also, it should have been followed by its application on assumed state of facts supported by substantial evidence from which, if believed, the jury would have been authorized to find that the death of the child was caused by an unavoidable accident. Bailey v. Woodrum Truck Lines, Tex.Civ.App., 36 S.W.2d 1090.

■ Each of the parties pleaded affirmatively that the accident was caused by the negligence of the other and neither pleaded that it was caused by an unavoidable accident, as that phrase is legally defined. In such case it was not error to refuse to instruct on that issue, Southland Greyhound Lines et al. v. Dennison, Tex.Civ.App., 62

S.W.2d 500; Avra v. Karshner et al., 32 Ohio App. 492, 168 N.E. 237, though there is authority to the contrary, O'Connell v. Home Oil Co. et al., 180 Wash. 461, 40 P.2d 991.

It has been held that under the defendant's plea of general denial, he is entitled to an instruction on unavoidable accident if warranted by the evidence (Galveston, etc., Co. v. Washington et al., 94 Tex. 510, 63 S.W. 534; Suttle v. Texas Elec. Co., Tex. Civ.App., 272 S.W. 256; Colorado & S. Ry. Co. v. Rowe, Tex.Com.App., 238 S.W. 908), but that is not the state of the pleadings here.

The judgment against defendant should be affirmed.

The Insurance Company filed a separate brief, in which certain questions not heretofore considered are presented.

At the close of plaintiff's case the Insurance Company moved for a directed verdict in its favor, which motion was sustained by the court, and the jury was accordingly instructed to, and did, return such verdict. Thereafter, the defendant Hayes introduced his testimony, after which the plaintiff moved to set aside the directed verdict in favor of the Insurance Company and that she be permitted to supplement her testimony with that of another witness. Over the objection of the Insurance Company the verdict of the jury was set aside and other evidence introduced by the plaintiff. At the close of plaintiff's testimony the Insurance Company renewed its motion for a directed verdict, which motion was overruled by the court. Thereupon the Insurance Company elected to stand on its motion for a directed verdict, and refused to submit any testimony or to otherwise take part in the proceedings that followed.

The Insurance Company raises a number of questions, but all are disposed of by the answers to two: Was the defendant a servant of the Insurance Company? If so, was he at the time of the accident acting in the course of his employment, so that the Insurance Company became liable for the death of the child under the rule respondeat superior?

By moving for an instructed verdict the Insurance Company rested its case on a question of law; that is, taking as true all testimony favorable to plaintiff, and only such other (if any) which, under the rules of law the jury was required to accept as true; with all reasonable inferences that could be deduced therefrom, in a light most favorable to plaintiff, had a case been made that would support a judgment? Sandoval County Board of Education v. Young, 43 N.M. 397, 401, 94 P.2d 508; Merchants Bank v. Dunn, 41 N.M. 432, 70 P.2d 760.

We find there is testimony under this rule which will support the following facts:

The Insurance Company employed ten agents to solicit industrial insurance and make collections on outstanding insurance policies within the city of Albuquerque. The city was divided into districts called "debits," one of which was assigned to each

of its agents, among whom was the defendant. The defendant was employed by the Insurance Company under a written contract, which among other things provided that he would be paid a commission on all collections of premiums on insurance made by him within his debit. The contract between defendant and the Insurance Company required defendant to solicit insurance and collect premiums each week within his debit, and to obey the orders and carry out the instructions of the Insurance Company in obtaining insurance and collecting premiums on existing policies of insurance within his debit.

Defendant had about three hundred accounts within his debit, which was a district of considerable size. It was his duty under the contract to call at the office of the Insurance Company in the city of Albuquerque each morning before going to work in his debit, for instructions and to hear "pep talks," and thereafter to go immediately to perform his duties in the debit. Mondays, Tuesdays and Wednesdays of each week were set apart for collecting weekly premiums due from policy holders. He was required to begin collecting Monday morning "bright and early," put in long days and continue until every policy holder had been visited each week. He was required to spend the remainder of the week in selling new insurance, though he was authorized to make collections and sell insurance during any day of the week. He was required each day to deliver the money collected that day to the Insurance Company at its office. Very definite and specific instructions to agents regarding their work and the manner of doing it were contained in a book of instructions which each agent was required to learn and follow in selling insurance and collecting premiums. The defendant was permitted to sell both industrial and ordinary life insurance outside his debit, but this was optional and the movements of agents in that regard were not controlled by the Insurance Company. Defendant was paid a commission on the premiums for insurance collected by him.

Nine of the ten agents employed by the Insurance Company in the city of Albuquerque used their own automobiles in their work, with the knowledge of the Insurance Company, and without objection from it.

The Insurance Company reserved the right to discharge the defendant at any time. The rule was that an agent would be discharged if he failed to make a record satisfactory to the Insurance Company.

The defendant's debit was bounded on the north by Towne Avenue, on the east by Sixth Street, on the south by Central Avenue, and on the west by Fifteenth Street. Marquette Avenue crosses the debit between Towne and Central, crossing Sixth Street on the east and Fifteenth Street on the west. The defendant was approaching his debit from the east on Marquette Avenue at about 6:30 o'clock P. M. when he collided with and killed the plaintiff's intestate, a boy ten years old, who was riding a bicycle, going north on Sixth Street. The collision occurred ap-

proximately in the center of the intersection of Sixth and Marquette Streets.

The defendant testified that on the morning of the day of the accident he went to the office of the Company, as required by its rules, attended a staff meeting for an hour, left the office of the Insurance Company at 9 o'clock, driving in his automobile, to work on his debit; worked until 11 o'clock, then went home for lunch. He then returned to his debit, about 1 o'clock, worked until 6 o'clock, when he called at the home of his fiancee who lived a short distance from his debit. He stated, "When I got to her house I decided I would quit work for the day." He testified that after remaining there fifteen minutes he started to Old Town for a family visit at the Dale Zinns', and was en route there at the time of the accident; that he was not then acting in the course of his employment by the Insurance Company.

Dale Zinn testified that the defendant visited his home frequently, and had a standing invitation to come at his pleasure; that defendant had solicited him a number of times to take life insurance, but he had not done so. The defendant went to Zinn's house about two hours after the accident.

The right of plaintiff to recover depends first upon whether the relation of master and servant existed between the defendant and the Insurance Company. The exact question was before the Supreme Court of Texas in American Nat. Insurance Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107

A.L.R. 409. The plaintiff in error in that case is the defendant Insurance Company here, and the cause of action is almost identical. It was held that the contract between the Insurance Company and its agent, whose negligent act caused the damage that resulted in the suit, did not create the relationship of master and servant, but that of employer and independent contractor. This case overruled several decisions of the Courts of Civil Appeals of that state. The question has been before the courts a number of times with conflicting decisions. Wesolowski v. John Hancock, etc., Ins. Co., 308 Pa. 117, 162 A. 166, 87 A.L.R. 783; Pesot v. Yanda et al., Mo.Sup., 126, S.W.2d 240; Vert v. Metropolitan Life Insurance Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381, and anno. page 1389; Chiles v. Metropolitan Life Insurance Co., 230 Mo.App. 350, 91 S.W.2d 164; Metropolitan Life Insurance Company v. Gosney, 8 Cir., 101 F.2d 167; Miller v. Metropolitan Life Insurance Co., 134 Ohio St. 289, 16 N.E.2d 447; American Savings Life Insurance Co. v. Riplinger, 249 Ky. 8, 60 S.W.2d 115. Regarding the rule of determining such relationship see Burruss v. B. M. C. Logging Co., 38 N.M. 354, 31 P.2d 263; Restatement Law of Agency, Secs. 220, 221 and 250. We need not determine that question; nor whether the defendant was using his automobile as a means to facilitate the Insurance Company's business, with its express or implied authority, a fact necessary to be established by plaintiff before she could recover. Kennedy v. American Nat. Insurance Co., 130 Tex. 155,

107 S.W.2d 364, 112 A.L.R. 916 and anno. at page 921 and previous annos. in A.L.R. on the same subject; Wesolowski v. John Hancock Insurance Co. supra.

For the purposes of a decision, we will assume that the relation of master and servant existed between the defendant and the Insurance Company, and that defendant was impliedly authorized by the Insurance Company to use his automobile in collecting premiums and selling insurance within his debit. But we find a fatal lack of proof of the fact that at the time of the accident the defendant was using his automobile in the course of his employment by the Insurance Company, in the absence of which plaintiff cannot recover. The only evidence that tends to establish this fact is testimony that the defendant, just prior to the accident, was travelling east on Marquette Avenue, toward his debit and would have entered it after crossing Sixth Street, if the accident had not occurred; and the testimony of defendant that he had spent the day, until about thirty minutes before the accident, on his employer's business, within his debit. If we eliminate the testimony of the defendant (which we must do under the rule we have stated) that he had ceased work for the day and at the time of the accident was en route to visit a friend in another part of the city, all that remains to prove this necessary fact is the evidence just stated.

As there remains no direct proof of defendant's object in driving west on Marquette Street, unless the facts proved warranted the jury in drawing therefrom an inference that at the time of the accident the defendant was acting within the scope of his employment by the Insurance Company, the trial court erred in refusing to sustain the Insurance Company's motion for an instructed verdict.

A reasonable inference may be defined as a process of reasoning whereby, from facts admitted or established by the evidence, or from common knowledge or experience, a reasonable conclusion may be drawn that a further fact is established. Semerjian v. Stetson, 284 Mass. 510, 187 N.E. 829.

" 'Inference,' as regards sufficiency of evidence to support Industrial Commission's findings, is to be clearly distinguished from mere guess or conjecture, and must not only be rational, but a logical deduction from established facts and not one of several inferences which might with equal propriety be drawn from same facts." Hills Dry Goods Co. v. Industrial Commission, 217 Wis. 76, 258 N.W. 336.

An inference is not a supposition or a conjecture, but is a logical deduction from facts proved (State v. Jones, 39 N.M. 395, 48 P.2d 403) and guess work is not a substitute therefor.

"Where evidence is equally consistent with two hypotheses, it tends to prove neither." P. F. Collier & Son Co. v. Hartfeil, 8 Cir., 72 F.2d 625.

Having discarded the testimony of defendant regarding his purpose in leaving his debit at 6 o'clock, we have not the

slightest evidence upon which to base even a conjecture regarding it. As to his destination or mission at the time of the accident, we have no facts from which a logical deduction could be drawn; only conjectures or probabilities. The jury could not reasonably infer that he was driving into his debit for the purpose of working there in the evening, or that he was going to write insurance outside his debit, for that would be conjecture. We might reason that it was probable he was driving back to his debit to work in the evening, as the agents did at times; or that he would not return and work in the evening after a full day's work. Either might be correct, but neither is a logical deduction from the facts proved. There are no facts proved from which the logical deduction can be drawn that he was returning to his debit to continue his work for the Insurance Company after having left his debit at 6 o'clock.

▮ The burden was upon the plaintiff to establish that at the time of the accident the defendant was acting in the course of his employment. If direct proof could not be made, then there must be proof of facts from which such relation between the defendants could be reasonably inferred. But here we have no such facts; the jury reached its conclusion by guesses, conjectures, or the weighing of probabilities; not by logical deductions from facts proved.

▮ The plaintiff argues that the testimony of Dale Zinn, taken with other testimony, establishes that defendant at the time of the accident was going to see Zinn for the purpose of soliciting insurance, and therefore he was acting within the scope of his employment.

There are three answers to this argument:

First, there is no testimony to establish this fact, nor is there any from which it could be reasonably inferred. It is a possibility, because he had several times solicited Zinn to take a policy of life insurance. But he was a friend of Zinn's and had been making friendly visits to Zinn's home, taking the evening meal with the family on an average of every other night for a month or more, and there is no proof that he was going to Zinn's home on that occasion to solicit insurance.

Second, there is no testimony indicating that the Insurance Company controlled defendant's movements while selling insurance outside his debit, but the contrary is established and undisputed. His regular employment, which was under the supervision of the Insurance Company, was within his assigned territory. And only while so engaged could it be said that he was a servant of the Insurance Company.

▮ Third, he was at liberty to sell life insurance (and that was the kind of insurance in which Zinn was interested) in or outside his debit. Assuming that he was en route to Zinn's home for the purpose of soliciting Zinn's application for life insurance, he was acting as an ordinary life insurance agent, and such agents are not

within the classification of servants. Vert v. Metropolitan Life Insurance Co., supra.

The judgment against the defendant Insurance Company will be reversed and the cause dismissed as to it, and affirmed as to defendant Hayes.

It is so ordered.

BICKLEY, C. J., and ZINN, MABRY, and SADLER, JJ., concur.