Manuel MOYA and Ernestine Moya, his wife, Plaintiffs and Petitioners,

v.

Dan DeBACA d/b/a DeBaca and Company Credit and Collection Agency, Eloy A. Duran (Justice of the Peace, Precinct No. 15, Bernalillo County, New Mexico), Seymour Potter (Justice of the Peace, Precinct No. 15, Valencia County, New Mexico), and Salomon Vallejos, Clerk of the Court of the Second Judicial District of the State of New Mexico, Defendants and Respondents.

State of New Mexico, Intervenor.

Civ. No. 7271.

United States District Court
D. New Mexico.

July 19, 1968.

Ellis J. French and Georgina Fowlie, Albuquerque, N. M., for plaintiffs.

Sedillo & Howden (Frederick B. Howden), Belen, N. M., for defendant De-Baca.

Wm. J. Bingham, Asst. Dist. Atty., for Vallejos.

Boston Witt, Atty. Gen., James V. Noble, Sp. Asst. Atty. Gen., Santa Fe, N. M., for intervenor.

Before PICKETT, Senior Circuit Judge, PAYNE, Chief Judge, and THEIS, District Judge.

## OPINION

PAYNE, Chief Judge.

This is an action brought to test the constitutionality of the New Mexico garnishment statutes.[1] It is asserted that the statutes in question violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. Plaintiffs ask this Court to permanently enjoin their enforcement. As the constitutionality of state statutes is involved and the questions raised are substantial, a three-judge court has been convened pursuant to 28 U.S.C. Sec. 2281.

On July 10, 1967, a money judgment in the amount of $157.91 was rendered in favor of defendant DeBaca and against plaintiffs by a Valencia County, New Mexico, District Judge. Defendant DeBaca thereafter initiated garnishment proceedings against the plaintiffs in a Bernalillo County Justice of the Peace Court. The Proceedings were dismissed, however, the Bernalillo County Justice of the Peace having no jurisdiction in the matter.

■ An initial question presented is whether the absence of a present garnishment proceeding against the plaintiffs in this suit makes the case moot. We conclude that a justiciable matter is presented by the facts of this case for the reason that the plaintiffs are subject to garnishment proceedings in the future. The garnishment proceedings brought in Bernalillo County on a Valencia County judgment were dismissed for jurisdictional reasons. Presumably, the plaintiffs are subject to garnishment in the proper jurisdiction at this time. Such "voluntary cessation of allegedly illegal conduct" does not deprive this Court of power to hear and determine the case, "i. e., does not make the case moot". United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct.

894, 97 L.Ed. 1303. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, similarly holds that the threat of *future* application of a law argued to be unconstitutional presents a justiciable controversy, even though no *present* controversy exists.

■ Secondly, defendants urge that this Court should abstain in this case in order that the New Mexico State Courts might have an opportunity to pass upon the questions raised. There is, at present, a case pending before the New Mexico Supreme Court that would appear to duplicate the present action with respect to at least one issue. Such does not deprive this Court of the right, or the duty, to inquire into the constitutional questions raised, however, and this inquiry need not be postponed while the State Court appeal is completed. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), indicates the abstention doctrine should not be ordered "unless the state statute is of an uncertain nature, and is obviously susceptible to a limiting construction". Note 14, page 251, 88 S.Ct. page 397. And, citing McNeese v. Board of Education, etc., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622, the Court observed that "abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." 389 U.S. 251, 88 S.Ct. 397. We do not believe application of the abstention doctrine would be appropriate in this case.

■ The first question presented with respect to the plaintiffs' constitutional claims is whether under the facts of this case the New Mexico statutes are violative of due process requirements in that they permit deprivation of exempt wages without notice and a hearing. We have concluded that this question must be answered adversely to the plaintiffs.

According to Section 26–2–1, New Mexico Statutes Annotated, a writ of

---

1. Sections 24–6–7; 26–2–1 to 26–2–10, 26–2–21 to 26–2–36, New Mexico Statutes Annotated.

Chapter 24 is entitled "Execution and Foreclosure"; however, Section 24–6–7 relates to the garnishment statutes.

garnishment may be issued in the following cases:

(1) In any case where an original attachment may be issued as provided by the attachment laws of the state of New Mexico;

(2) Where the plaintiff in any suit sues for a debt and he or someone for him makes affidavit that such debt is just, due and unpaid, and that the defendant has not within his knowledge property in his possession within this state subject to execution sufficient to satisfy such debt; and that the garnishment applied for is not sued out to injure either the defendant or the garnishee.

(3) Where the plaintiff has a judgment against the defendant in some court of this state and he or someone for him makes affidavit that the defendant has not within his knowledge property in his possession within the state subject to execution sufficient to satisfy such judgment.

It is important to note that the creditor in the present case proceeded under subsection (3) above, and not under subsection (2). With this in mind, we conclude that Endicott-Johnson Corp. v. Encyclopedia Press, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288, is dispositive of the plaintiffs' contention regarding notice. The precise holding in that case, insofar as it bears on the present case, is that due process does not require that a judgment debtor shall be given notice and an opportunity to be heard before issuance of a garnishment to satisfy the judgment. The New York law discussed in *Endicott-Johnson* permitted garnishment following *judgment,* as does subsection (3) of Section 26-2-1, N.M.S.A., and the Supreme Court reasoned that the judgment debtor had already been provided with notice and an opportunity to be heard in the proceeding that resulted in the judgment against him. In addition, it may be observed, the plaintiffs here had actual notice of the garnishment, were represented by counsel, and made no attempt to claim their exemptions.

The plaintiffs secondly contend that the garnishment statutes deny equal protection of the law because they discriminate against debtors on the basis of wealth, nature of assets, and employment. This contention is directed toward the exemption provisions of the law, which, plaintiffs assert, discriminate unreasonably against wage earners as a class.

■ Neither of the exemption statutes that relate to garnishment in New Mexico are self-executing. A debtor must file a claim of exemption, and a hearing held, before the exempted wages may be recovered. Section 24-6-7 [2] of the New Mexico Statutes is an "in-lieu of homestead exemption" in the amount of $500.00 available to the debtor not owning a homestead. Section 26-2-27 [3] is a "head-of-household" exemption that

2. Sec. 24-6-7 Family head not owning homestead—Additional exemption—Limitation in case of necessities and manual labor.—*Any resident of this state, who* is the head of a family and not the owner of a homestead, may hold exempt from levy and sale, real or personal property, to be selected by the person, his agent or attorney, at any time before sale, not exceeding five hundred dollars ($500) in value in addition to the amount of chattel property otherwise by law exempted; Provided, however, that the in-lieu exemption authorized by this section shall not apply on the first thirty three and one-third per cent (33⅓%) of any amount due the debtor as salary or wag-es prior to the service of writ of garnishment.

3. Sec. 26-2-27 *Wages of head or resident family partially exempt.*—No person shall be charged as garnishee, in any court in this state, on account of current wages, or salary due, from him to a defendant, in his employ, for more than twenty-five per cent (25%) of any wages or salary due the defendant for the last thirty (30) days' service, provided, that if the wages or salary due said defendant for the last thirty (30) days' service are one hundred dollars ($100) or less, garnishment may be had for no more than twenty per cent (20%) of such wages

limits garnishment of the wages of the head of a family to twenty or twenty-five per cent of the wages owing, depending on the amount of salary involved. The in-lieu exemption does not apply to the first one-third of wages due the debtor. Thus, the wage earner is not entitled to have the $500.00 exemption under Section 24–6–7 applied to his total wages in the same way that the exemption may be applied against the total assets of non-wage earners. Plaintiffs contend this limitation is an unreasonable discrimination against wage earners. They argue that the distinction drawn between wage earners and other classes imposes burdens upon wage earners as a class that are clearly arbitrary, unreasonable, inequitable and unjust. We disagree with this conclusion.

■ Legislation such as that questioned in this case need not necessarily treat all groups equally. There is no constitutional prohibition of legislation which imposes special burdens upon defined classes in order to achieve a permissible end. The test is not whether a distinction between classes is drawn, but rather, whether "the distinctions that are drawn have 'some relevance to the purpose for which the classification is made'". Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577.

We believe the distinctions that are drawn by the exemption statutes here in question are relevant to the purpose for which the classification of wage earners is made.

Were no distinction drawn by Section 24–6–7 between wage earners and other groups, the $500.00 in-lieu exemption would render the garnishment law largely ineffective. Wage earners of the economic group frequented by garnishment proceedings would rarely have wages owing in excess of $500.00, and should they be permitted to apply the in-lieu exemption to their total wages as a non-wage earner may apply the

exemption to his total assets, no wages subject to garnishment would remain. The limitation imposed as to wage earners and the classification inherent in such limitation seems to the Court to be reasonable and relevant to the Legislature's obvious purpose in enacting a garnishment law.

■ The questions of whether the garnishment laws work a hardship upon the economically depressed, and whether or not the statutes need revision, are for the Legislature and not for this Court. It need not be testified to that the present provisions are oppressive, or that their effect upon low-income families is disastrous and that reasonable men might find this unacceptable. However, "(t)he criterion of constitutionality is not whether we believe the law to be for the public good." Mr. Justice Holmes, dissenting in Adkins v. Children's Hospital of District of Columbia, 261 U.S. 525, 570, 43 S.Ct. 394, 406, 67 L.Ed. 785. We may not declare a statute unconstitutional solely upon the ground that it is unjust and oppressive and will work hardship upon the poor. Fisch v. General Motors Corporation, 169 F.2d 266 (6th Cir., 1948).

From all of the foregoing, it is the opinion of this Court that no relief should be granted in this case. Accordingly, the cause of action should be, and it is hereby dismissed.

THEIS, District Judge (dissenting).

I find myself in substantial agreement with my fellow judges of the majority in everything said in the well-written opinion preceding. However, I do not think it goes far enough in reaching the factual and legal problem posed before the Court, and I do not agree with their ultimate disposition of this case. Hence, I respectfully dissent from the conclusion of the majority that this cause should be dismissed for failure to state a valid cause of action.

or salary. No exemption whatever shall be claimed, under the provisions of this section in case the debtor is not the head

of a family, or in case the debtor is the head of a family, where the family does not reside in this state.

Turning to the plaintiffs' allegations that the provisions of the New Mexico garnishment statutes as administered in the state courts of New Mexico are discriminatory and oppressive, I find merit both in the factual basis and upon the basis of legal contentions advanced by the plaintiffs. I cannot reconcile my views with the majority of this Court and their determination of this case as to that particular issue. I believe that the plaintiffs here are entitled to injunctive relief under the provisions of the Fourteenth Amendment, upon the ground of denial of equal protection of the state's law.

Let us examine more fully the undisputed evidence outlining the factual situation before the Court on this point of law. It should be noted that the only evidence introduced was on behalf of the plaintiffs, so that the only bases for disregarding it would have to be credibility or relevancy.

The defendant DeBaca secured a proper and valid judgment against the plaintiffs on a $157.71 claim in defendant Potter's court. In an effort to make arrangements with the judgment creditor DeBaca, plaintiffs approached him and offered to pay off the debt in monthly or weekly installments greater than the judgment creditor could have secured by garnishments against the pay check of the husband-plaintiff, assuming he was allowed each time his full legal exemptions under the New Mexico exemption statutes, 24–6–7 [1] and 26–2–27 [2].

The defendant DeBaca, who operated a collection agency, had a number of other small claims concerning debts owed by the plaintiffs Moya which, with the judgment claim, totaled some $525.00. He told the plaintiffs that the only settlement he would make with them would be for the payment of $448.00 cash. The testimony of the plaintiffs further

showed that the defendant DeBaca threatened repeatedly to garnish plaintiff's pay check so as to cause the husband-plaintiff to be fired, and to pursue such garnishments as to whatever other employment plaintiff might be able to obtain. Defendant DeBaca did garnish plaintiff Moya's employer and evidence detailed the hardships which followed to the plaintiffs and their family as a result of the tying up of the husband-plaintiff's pay check. The evidence further showed that the plaintiff's total pay check was tied up for ten days and that the average time that other debtors' pay checks were tied up in the courts of New Mexico was twenty to twenty-five days.

Plaintiffs' counsel point out and ask the Court to take judicial notice of the fact that successive garnishments may be issued under the New Mexico garnishment statutes without limitation, and evidence was presented in Plaintiffs' Exhibit 3 showing a series of four successive garnishments issued within thirty-one days in one of the district courts in New Mexico as to a debtor. Plaintiffs further point out that by separating his total claims against the plaintiffs, the defendant DeBaca might subject the plaintiffs Moya to more than one suit and more than one garnishment at the same time by the same creditor collection agency, which would entail a further delay and legal difficulties in unharnessing exempt portions of his pay check. Plaintiffs further cite and ask the Court to take judicial notice of a series of decisions by the Supreme Court of New Mexico, all holding that garnishment is not a device by which exempt property may be reached [3], and that exempt property includes personal earnings and current wages.[4]

At least two portions of the New Mexico garnishment statutes indicate that the exempt portion of current wages

---

1. Quoted in footnote 1 at page 6 of the majority opinion.

2. Quoted in footnote 2 at page 6 of the majority opinion.

3. McFadden v. Murray, 32 N.M. 361, 257 P. 999; Hewatt v. Clark, 44 N.M. 453, 103 P.2d 646; Laughlin v. Lumbert, 68 N.M. 351, 362 P.2d 507.

4. McFadden v. Murray, supra.

shall not be reached by garnishment provisions, namely, 26–2–27, in the first sentence thereof, and the last portion of 26–2–4,[5] which requires the garnishor to state facts in his affidavit of garnishment that the debt sued on and being collected is not exempt from garnishment under the 26–2–27 exemption section. Plaintiffs further cite cases of New Mexico's highest court and ask this Court to take judicial notice of the underlying purpose of the exemption statutes to alleviate hardship and prevent deprivation to a debtor's family of the necessities of life necessary to human existence, as stated:

"The language of the act should be construed in harmony with its humane and remedial purpose. Its design was to shield the poor, and not to strip them. The interest it assumes to protect is that belonging to the debtor, be it more or less. Whatever it be, within the limitations of the statute, the debtor's interest is exempt, in view of his own necessity, and of the probable destitution to which its loss might reduce the family depending on him for support. In re Spitz, 8 N.M. 622, 628, 45 P. 1122 (1896).

"The exemption statute was adopted as a humane policy to prevent families from becoming destitute as a result of misfortune through common debts which generally are unforeseen. Hewitt v. Clarke, [Hewatt v. Clark] 44 N.M. 453, 103 P.2d 646 (1945); Laughlin v. Lumbert, 68 N.M. 351, 362 P.2d 507 (1961)."

The plaintiffs also ask the Court to take judicial notice of 26–2–12,[6] which requires the garnishee-employer, after service of the writ on him, to hold all wages or salary due the defendant-debtor, not only at the time the writ is served, but which may become due the debtor within the twenty-day period within which the garnishee, under the statute, is allowed to answer a writ of garnishment. Thus, claim the plaintiffs, although the New Mexico Supreme Court has stated that garnishment is not a device by which wages or salary can be reached, and the New Mexico legislature, in Sections 26–2–27 and 26–2–4, has made it clear that the exempt portion of wages are not subject to garnishment, Section 26–2–12, by tying up all the debtor's wages, prevents the carrying out of the previously expressed legislative

5. "Before the issuance of the writ of garnishment under any of the provisions of section 2521 [26–2–1], the plaintiff or some person for him shall make application therefor in writing under oath signed by the applicant and addressed to the clerk of the proper court stating the facts authorizing the issuance of the writ, and further that the applicant has reason to believe and does believe that the garnishee, stating his name and residence, is indebted to the defendant, or that he has in his hands effects belonging to the defendant, or that the garnishee is an incorporated or joint stock company and the defendant is the owner of shares in such company or has an interest therein; and if such application is on account of a debt due by the garnishee to the defendant, it must further contain facts to show that the debt is not exempt from garnishment under section 2546."
(A compiler's note in New Mexico Statutes, 1953, Annotated, says: "Section 2546 means Code 1915 § 2546, which was specifically repealed by Laws 1917,

Ch. 18, § 2. The subject matter of said § 2546 is covered by 26–2–27.")

6. "Garnishee's rights and liabilities—Money judgment on failure to surrender choses in action.—A writ of garnishment served as provided by this article shall have the effect of attaching all personal property, money, rights, credits, bonds, bills, notes, drafts, or other choses in action, of the defendant in the garnishee's possession or charge or under his control at the time of the service of the garnishment or which may come into his possession or charge or under his control or be owing by him between that time and the time of filing his answer, but he shall not be liable to a judgment in money on account of such bonds, bills, notes, drafts, checks, or other choses in action, unless the same shall have been converted into money since the garnishment or he fails within such time as the court may prescribe to deliver them into court or to some officer designated by the court."

and judicial intent, and does, in fact, deprive the debtor temporarily, and often permanently, if exemption claim is not *quickly* and *correctly* made, of the exempt and principal portion of his wages.

Again, the plaintiffs cite and ask the Court to take judicial notice of the decision of the New Mexico Supreme Court in New Mexico National Bank v. Brooks, 9 N.M. 113, 49 P. 947, holding that once the employer-garnishee has answered and the court has entered an order to pay the money garnished over to the garnishor-creditor, a debtor cannot thereafter claim his exemption. It must be remembered also in this connection, that the New Mexico garnishment statutes have no self-executing features and do not provide for any actual or statutory notice of the fact of garnishment to be given by the garnishing creditor, the debtor's employer, or the court. There may or can be a substantial time elapse before a debtor finds that his pay check has been garnished. As an actual matter, however, most of the time the debtor is either told by his employer or learns of the happening when his pay check is not forthcoming on the due date. Neither do the New Mexico statutes provide for any notice to be given to the debtor of the court's order to pay over to the creditor so that the debtor is placed in a state of doubt as to how long he has to exert his claim of exemption—a sort of "race-for-the-courthouse" situation.

Additionally, the plaintiffs have introduced evidence to show that it is the custom and usage throughout the courts of the State of New Mexico to completely ignore the latter portion of Section 26–2–4 of the New Mexico garnishment statutes, requiring facts to be stated by the garnishing creditor showing that the debt sought to be garnished is not exempt. The same evidence showed that the custom and usage of the courts in most of the judicial districts of New Mexico has been to garnish the total wage or salary check of the employee-debtor rather than going after the exempt portion. The Court was also asked to take judicial notice of the fact that the garnishment statutes did not provide for the immediate release of the exempt portion of a debtor's pay check at the time the exemption was claimed, and that again, through the custom and usage of the New Mexico courts, there could be some considerable delay in releasing the debtor's check.

How does this set of facts fit the concepts of law argued and advanced by the plaintiffs? It has been said that equal protection analysis focuses on the relationship between the discrimination and the objectives of the statute or other governmental action under consideration. One of plaintiffs' arguments is that the New Mexico exemption statutes, 24–6–1 [7] and 24–6–6,[8] give a greater financial exemption to debtors with homesteads or

7. "Family homestead exemption—Mortgages and statutory liens excepted.— Husband and wife, widow or widower, living with an unmarried daughter or unmarried minor son, may hold exempt from sale, or judgment, or order, a family homestead, not exceeding three thousand dollars ($3,000) in value, and the husband, or in case of his failure or refusal, the wife, shall have the right to make the demand therefor; but neither can make such demand if the other has a homestead. The provisions of this section shall not apply or extend to a judgment or decree rendered on a mortgage, nor to impair the lien by mortgage or otherwise, of the vendor for the purchase-money of the premises in question, nor the lien of a mechanic or laborer or other person under any statute of this state, for materials furnished or labor performed in the erection of the dwelling house thereon or in the repair or improvement of such dwelling-house."

8. "Money award when homestead subject to liens precluding allowance. When a homestead is charged with liens, some of which as against the head of a family or the wife, preclude the allowance of a homestead to either of them, and others do not preclude the allowance, and a sale of the homestead is had then after the payment, out of the proceeds of the sale, of the liens so precluding the allowance, the balance, not exceeding fifteen hundred dollars ($1500) shall be awarded to the head of a family, or the wife, as the case may be, in lieu of the homestead, upon his application, in person, or by agent or attorney."

property other than salary than is provided in the wage exemption statutes (24–6–7 and 26–2–27), and that, therefore, the wage earner is unreasonably discriminated against within the equal protection concept provision of the Fourteenth Amendment. I am in accord with my fellow judges that this argument has no merit and that the New Mexico exemption statutes, insofar as they set up different classes of debtors with different exemptions, are reasonable and within the scope and lawful purpose of the legislative intent when viewed in such a classification concept.

Plaintiffs also argue that the system of administration of the New Mexico garnishment statute discriminates between the rich and the poor. Neither can I accept this basis as one showing valid chasms of discrimination. It is much too broad and constitutional interpretation has never been put upon this basis alone. It is true that the economic gap is a real factor insofar as a wage earner receives only so much money in his periodic pay check which will reach only so far, and quite often a limited "so far" in taking care of the economic needs of his family for the period. This lack of adequate wages, savings, or accumulated wealth by the wage earner is further impinged on by a portion of the New Mexico garnishment statute, namely, 26–2–31,[9] which provides that the costs of garnishment and attorney fees may be assessed against the debtor-wage earner, apparently on each occasion upon which a writ of garnishment is sought by the creditor. Legal and sociological studies, as cited in plaintiffs' brief, have undeniably established that garnishment unbridled may abridge the right to work by precipitating joblessness, family hardship, family break-up, bankruptcy and rising welfare costs—social as well as individual concerns. Congress, on the national level, in the just recently passed "Truth in Lending Act" (Public Law

90–321; 82 Stat. 146), has recognized the inequities and hardship in garnishment, and provided safeguards in the lending and collection areas regulated by that law.

I feel that there is a classification, touched on in plaintiffs' brief, which fits within the framework of the equal protection clause of the Fourteenth Amendment. Such a class separation or distinction exists as between creditors and debtors. It was on this initial basis that the New Mexico legislature passed judgment execution laws to aid creditors in realizing or collecting the fruits of a judgment, and passed exemption laws to provide protection for and guard against harshness in the application of the execution laws as they applied to debtors, thus purportedly balancing the economic interests of these two classes. The courts followed and implemented both of these legislative purposes. Therefore, though it be broad, a creditor-debtor classification does exist. Since the stated legislative purposes of the exemption laws are readily apparent, as expressed in the specific exemption sections, and since the judicial interpretation of that legislative intent is more fully and plainly stated, *it is an established policy of the State of New Mexico that debtors are to have the benefit of the exemption statutes as stated.* Yet, as a result of other sections of the garnishment statutes, some court decisions, and custom and usage in the state courts of New Mexico, there has been set up a veritable obstacle course through which a bewildered, often ignorant, and almost always impoverished, debtor must pick his way in order to attain the expressed public policy of the state that he is to have certain safeguards and protections for his and his family's economic well-being, among which are included the right to work, the right to the fruits or compensatory results of his labor, and the right to be free from unnecessary

---

9. "Costs—Attorney fee for garnishee.— The costs of the proceeding, including a reasonable attorney's fee for the gar-

nishee, shall be taxed as in ordinary suits against the plaintiff or defendant, or both."

harassment and extra and needless expense to obtain the objectives which the state has already said it was giving him. All of these things add up, in my opinion, to an invidious discrimination through the administration of state court processes in New Mexico of its garnishment statutes to deprive this class of debtors of the equal protection of the law in the light of the governmental purpose asserted by New Mexico as justification for enactment of the exemption statutes, including those applicable to garnishment. The precise discrimination, as I see it, occurs in favoring and protecting creditor interests, as against debtor interests in an arbitrary and unreasonable manner in the light of expressed legislative and judicial purposes to the contrary, and at exhorbitant social and financial cost to both the wage earner and the community. See Griffin v. People of State of Illinois, 351 U.S. 12, 29, 76 S.Ct. 585, 100 L.Ed. 891 (1956); McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222; Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Harrell v. Tobriner, D.C., 279 F.Supp. 22; and Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

A valid law cannot give something, such as an exemption, and then in effect take it away by making its attainment difficult or unreasonable. Courts cannot, in the performance of their duties, tolerate contradictions and paradoxes in the law. When such differences exist between purpose and result of law, the evident fruition is public disrespect for law and order. The Constitution, and especially the Fourteenth Amendment, is the axe to hew down such incongruities.

Although constitutional obligation is upon both, if state courts fail to act, then federal courts should do so. Plaintiffs have offered proof that no speedy and adequate remedy is available to them through the New Mexico state courts. It is sufficiently apparent to the writer that cruel or harsh effects constituting irreparable harm may be done these plaintiffs by continued denial of their constitutional rights in connection with the administration of New Mexico garnishment statutes. I would direct injunction to issue against the defendants.