# WOOLARD v. FERRELL et al.—169 S. W. (2d) 134.

Middle Section. November 14, 1942.

Rehearing denied December 19, 1942.

Petition for Certiorari denied by Supreme Court, February 27, 1943.

W. S. Faulkner, of Lebanon, for appellant.

Louis Chambers and Allison B. Humphreys, Jr., both of Lebanon, for appellees.

HOWELL, J. Mrs. Fannie Woolard died in Wilson County, Tennessee, on May 3, 1937, and her will in which she appointed the defendant Walter D. Ferrell, as executor, was probated on May 10, 1937. Under the terms of this will which was executed on February 25, 1932, the testatrix bequeathed and devised her personal and real property to her only son the complainant, G. R. Woolard, and his three children, James Robert and Early Woolard and Mrs. Nelda Woolard Churchill, equally, one-fourth to each of them. The will contained the following clause:

"In the event that any one of the beneficiaries named in this Will should contest it, such contestant by such action on his part shall forfeit all of the property that he would otherwise take under this Will, and my property in that event Will pass to the beneficiary or beneficiaries who do not contest this Will.

"I hereby nominate and appoint W. D. (Walter) Ferrell as Executor of this Will and most earnestly urge him to see that the provisions of this Will are fully carried out."

After he had qualified as Executor of the will of Mrs. Fannie Woolard, the defendant, as such executor, had some litigation with the complainant involving the possession and ownership of some securities. The Executor was successful in this suit which was tried in the Chancery Court and in the appellate courts and collected from G. R. Woolard about $4,900 for the estate of his testatrix.

On December 21, 1939, G. R. Woolard filed a petition in the County Court of Wilson County contesting the will of his mother Mrs. Fannie Woolard, and based the contest upon the following allegations in the petition.

"First. On information and belief, the Petitioner avers that at the date of said paper, and at the time it is alleged that Petitioner's Mother, Mrs. Fannie Woolard, signed and published the same as her last Will, she was suffering under such strain of imbecility, that she did not have sufficient mental capacity to make a Will.

"Second. If at the time Mrs. Fannie Wolard is alleged to have executed said paper, she, in fact, did publish same as her Will, which petitioner denies, Petitioner avers she was misled, confused and so ill directed in the execution that the said instrument does not express her real desire and, therefore, is not her Will.

"Third. If Petitioner's Mother, Mrs. Fannie Woolard did in fact sign and publish said paper as her Will, which Petitioner denies, then Petitioner avers that she did so by reason of the undue influence of the said Walter D. Ferrell, who by some mysterious means succeeded in having himself appointed Executor thereof, and, for that,

Petitioner says it is not the genuine Will of his Mother, Mrs. Fannie Wolard.

"Fourth. The Petitioner will respectfully show the Court that the said W. D. Ferrell is not the proper man to act as Executor in the cause; that he is prejudiced and bias against the Petitioner; that by his course of conduct and by his statements, he is not a man who would be concerned in the Petitioner having a fair deal and justice in these premises; the past history of the said Ferrell does not entitle him to execute the trust reposed; the past history of the said Ferrell in matters involving finance does not constitute him as one to whom should be intrusted the winding up of an estate; the past history of the said Ferrell does not inspire the Petitioner to repose confidence either in his ability or in his honesty to perform this trust with fairness and impartiality; upon many grounds and for many additional reasons to be preferred to the Court and to be founded upon proof, this Petitioner, the only child and sole legatee and heir at law of his Mother, insists with the Honorable Court that justice and security demands that the said Ferrell be deposed as administrative Executor in this case and that some honest competent citizen be appointed to act in his stead."

Upon the trial of the will contest in the Circuit Court the jury found the issues in favor of the will and dismissed complainant's petition.

After receiving a letter from the complainant inquiring whether or not the executor intended to turn over to him one-fourth of his mother's net estate, the executor notified the complainant by a letter dated November 9, 1940, that it would be his, the executor's duty under the terms of the will, to insist that by reason of having instituted the

contest of Mrs. Woolard's will, he, the complainant, had forfeited his individual share of his mother's estate.

The complainant then filed the bill in this cause on November 19, 1940, in which he seeks a judgment against the defendant for one-fourth of the net proceeds of the estate, alleging that his course in contesting his mother's will was not only based upon probable cause but actuated by an honest desire to save and preserve the estate for his grandchildren, referring to the children of his two sons who were beneficiaries of their grandmother's will. The bill contains the following allegations in connection with these two sons:

"He will show the Court that his Mother was fully acquainted with the worry and sorrow he had suffered because of his two sons; of the money he had expended to save them from conviction of alleged criminal offenses. She was well acquainted with their habits of inebriety and of their utter disregard of economy and frugality and she had been equally well acquainted with the futile, tho' earnest efforts of their father to correct them in their wild course of dissipation."

The defendants answered the bill denying all the material allegations and averring that the will contest was not instituted in good faith and upon probable cause, and demanded a jury to try the issues.

Upon the trial of the cause the defendant tendered an issue to be submitted to the jury as follows: "Did G. R. Woolard have reasonable or probable cause or grounds for contesting the will of Mrs. Fannie Woolard?"

The complainant objected to this issue and tendered one as follows: " 'Did G. R. Woolard, before instituting contest of the Will of his mother, Mrs. Fannie Woolard see & hear, the acts & statements of his mother of which

he testifies & was he told of the acts & deeds of his mother—reflection on his mother mentality that he insists he acted upon in instituting the contest & was he so advised by counsel as insisted.' "

The court submitted the first issue mentioned, the one tendered by defendant, and upon the trial the jury answered this issue. "No."

The complainant, after proper motions had been overruled, and after the court has approved the finding of the jury and entered a decree dismissing his bill, appealed to this court and has assigned errors which will be considered together.

■ ■ The law in Tennessee governing the effect of a will contest on the operation of a forfeiture clause in a will is fully discussed and is settled in an opinion by McKinney, Judge, in the case of Tate v. Camp, in 147 Tenn. 137, 245 S. W. 839, 844, 26 A. L. R. 755, where it is held that a forfeiture provision in a will is not void as against public policy, and that a legatee will not lose his interest under a forfeiture provision of a will if the contest was prosecuted in good faith and upon probable cause. In that case the court quoted in part with approval from the case of South Norwalk Trust Co. v. St. John et al., 92 Conn. 168, 101 A. 961, Ann. Cas. 1918E, 1090, as follows: " 'The law prescribes who may make a will and how it shall be made; that it must be executed in a named mode, by a person having testamentary capacity and acting freely, and not under undue influence. The law is vitally interested in having property transmitted by will under these conditions, and none others. Courts cannot know whether a will, good on its face, was made in conformity to statutory requirements, whether the testator was of sound mind, and whether the will was the

product of undue influence, unless these matters are presented in court; and those only who have an interest in the will, will have the disposition to lay the facts before the court. If they are forced to remain silent, upon penalty of forfeiture of a legacy or devise given them by the will, the court will be prevented by the command of the testator from ascertaining the truth; and the devolution of property will be had in a manner against both statutory and common law. Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution which enables a testator to shut the door of truth and prevent the observance of the law, is a mistaken public policy. If, on contest, the will would have been held invalid, the literal interpretation of the forfeiture provision has suppressed the truth and impeded the true course of justice. If the will should be held valid, no harm has been done through the contest, except the delay and the attendant expense.

" 'Where the contest has not been made in good faith, and upon probable cause and reasonable justification, the forfeiture should be given full operative effect. Where the contrary appears, the legatee ought not to forfeit his legacy. He has been engaged in helping the court to ascertain whether the instrument purporting to be the will of the testator is such. The contest will not defeat the valid will, but it may, as it ought, the invalid will. The effect of broadly interpreting a forfeiture clause as barring all contests on penalty of forfeiture, whether made on probable cause or not, will furnish those who would profit by a will procured by undue influence, or made by one lacking testamentary capacity, with a helpful cover for their wrongful designs.

" 'The practical difficulties following this exception are more apparent than real. Contests will be made only in causes where they are justified. Doubtful cases will not invite a forfeiture. There will be no more burden put upon the court in finding the fact of probable cause than in finding similar facts in other classes of cases.' "

The question is then presented whether or not G. R. Woolard had probable cause for instituting a contest of his mother's will.

Probable cause is defined in Webster's New International Dictionary as follows: "Probable cause, Law, a reasonable ground of presumption that a charge is, or may be, well founded."

In the case of Woolworth Co. v. Connors, 142 Tenn. 678, on page 681, 222 S. W. 1053, the court said:

"In considering the defense of probable cause the question of the guilt or innocence of the defendant in error is not necessarily involved. She may have been entirely innocent, and still the plaintiff in error could have relied upon this defense, if properly made out.

"On this point the Court of Civil Appeals very properly says:

" 'As to the first point, the law as to reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest or strong suspicion, that the person is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. In order to maintain an action for malicious prosecution, it is very clear that the plaintiff must aver and prove that the suit complained of was commenced and prosecuted without reasonable or

probable cause, and that it was malicious. The warrantlessness of the suit may, in many instances, be so obvious as that malice may be inferred from it. The question of probable cause applies to the nature of the suit, and the point of inquiry is whether the defendant had probable cause to maintain the particular suit upon the existing facts known to him.' Newell on Malicious Prosecution, 252.''

In that same case the court quoted from Cooper v. Flemming, 114 Tenn. 40, 84 S. W. 801, 68 L. R. A. 849, as follows: '' 'The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a matter of fact, but whether, supposing them to be true, they amount to a probable cause, is a question of law.' ''

██ It is undoubtedly true that mixed questions of law and fact are often submitted to juries, the court instructing the jury upon the applicable law and the jury finding the facts. In this case no criticism is made of the charge of the court and it does not appear in the record. It is therefore presumed that the charge was free from errors.

In the case of McElya v. Hill, 105 Tenn. 319, on page 325, 59 S. W. 1025, on page 1027, the court said: ''It is objected now for the first time in this court that this issue raises a compound question of law and fact, which was improper for the consideration of the jury. Such mixed questions of law and fact frequently arise, and are constantly passed on by juries. Questions of negligence and probable cause in actions for malicious prosecution are mixed questions of law and fact, yet they are passed on by juries almost daily in our circuit courts. In [Memphis Gayoso] Gas Co. v. J. M. Williamson, 9 Heisk.

[314], 340, Chief Justice Nicholson said, viz.: 'Whenever an action of this kind is commenced, and a plea of not guilty is interposed, the jury are to try the question of probable cause, and it is a question then compounded of law and fact. The jury are to decide it, as any other question, under the direction of the court as to the law. They judge of the facts for themselves, and receive the law from the court.' In the case of Whirley v. Whiteman, 1 Head [610], 617, which involved a question of negligence, Judge McKinney, in referring to the mode of trying cases consisting of both law and fact, says, viz.: 'The truth of the facts and circumstances offered in evidence in support of the allegations on the record must be determined by the jury, but it is for the court to decide whether or not these facts and circumstances, if found by the jury to be true, are sufficient in point of law to maintain the allegations in the pleadings. And this must be done in one of two modes: either the court must inform the jury hypothetically whether or not the facts which the evidence tends to prove will, if established in the opinion of the jury, satisfy the allegations, or the jury must find the facts specially, and then the court will apply the law.' ''

▇▇ The Chancellor by his denial of the motions for a decree for the complainant notwithstanding the verdict of the jury and for a new trial and by his decree in this cause has approved the finding of the jury that the complainant did not have probable cause for contesting his mother's will. This court will not disturb a finding of a jury, satisfactory to the trial court, where there is conflicting evidence and there is ample competent evidence to sustain this finding. See Hines v. Partridge, 144 Tenn.

219, 231 S. W. 16; Continental Insurance Co. v. Schulman, 140 Tenn. 481, 205 S. W. 315, and many other cases.

■ There was ample competent evidence upon which the jury based its finding of fact and this issue was properly submitted to the jury. The question to be determined was whether or not the complainant had reasonable or probable cause or grounds for contesting his mother's will and this question was submitted to the jury, presumably with a proper and appropriate charge by the court.

■ It is assigned as error that the court admitted witnesses for the defendant to state their conclusions as to the soundness of mind of Mrs. Fannie Woolard which were not supported by facts upon which to base such an opinion. This assignment is not sufficient in form as it does not point out with sufficient definiteness just what testimony is complained of. See Rules of the Court of Appeals—Rule 11—Subsections 3 and 5. We have examined the record carefully and do not find any errors in the admissions or exclusion of testimony by the trial court which materially affected the result of the trial.

■ The rule as to testimony in a case of this kind is stated in the case of Wheeler v. Parr, 3 Tenn. Civ. App. (3 Higgins), 374, on page 389, as follows: "It is clear that one who is perfectly sane, going about his ordinary avocations, and whose sanity has never been questioned, is judged by his entire course of conduct rather than by any particular incident or incidents; and to require a witness who expresses an opinion that such person is sane to give facts on which to base that opinion, further than that he has or had sufficient acquaintance with the person whose sanity is in question, or sufficient dealing or relations with him to form an opinion, would

be to require the picking out of some special act or acts as distinguished from a series of thousands of acts, and to base his opinion of sanity or insanity on such special acts. This, it occurs to us, is requiring a witness to separate one sane act or a few sane acts from a thousand, and say that he bases his opinion on those, when in truth he does not do so, but rather on the acts of years, or a lifetime. On the other hand, take one whose sanity has never been questioned during an acquaintance of years and let reason become dethroned; his talk, his actions and looks will bespeak his changed condition by becoming unusual. His acquaintances notice the unusual, the changed conditions, they impress everyone and are not difficult to detail, as compared with the former condition. The changed look, talk and actions that thus impress the friend, neighbor or acquaintance is that on which the opinion of insanity is based; and it [is] but reasonable that the facts be given as the basis of the opinion of insanity. In other words, the exceptions to the rule attract attention and make such impressions as that those who are called on to give reasons for noting the exceptions can give them.''

This case is quoted with approval by Chief Justice Green in the case of Davis v. State, in 161 Tenn. 23, on page 36, 28 S. W. (2d) 993, on page 997, where the court said: ''The third assignment of error criticizes an instruction of the trial judge to the effect that a nonexpert witness might not testify to the insanity of another without giving the facts on which the opinion was based, but that such a witness might testify to the sanity of another without setting out the facts upon which his opinion rested. The court below followed the rule announced in Wheeler v. Parr, 3 Tenn. Civ. App. [3 Higgins], 374,

and we think this rule is sound. In that case, in a scholarly opinion, Judge Hughes reviewed the authorities, our own cases and others. He pointed out, while previous decisions of this court had stated broadly that a non-expert witness might not testify as to the mental condition of another without stating the facts on which his opinion was based, that in none of those cases had a differentiation been made between such a witness testifying as to insanity and such a witness testifying as to sanity.''

Upon the whole record we are of the opinion that this complainant did not have a reasonable or probable cause for contesting his mother's will and we concur with the lower court in its finding of this fact.

No reversible errors having been committed by the Chancellor, all the assignments of error are overruled and the decree of the Chancery Court dismissing complainant's bill at his cost is affirmed.

The appellant and the surety on his cost bond will pay the costs of the appeal.

Felts and Hickerson, JJ., concur.

Affirmed.

### On Petition for Rehearing.

HOWELL, J. We are presented in this cause with a petition to rehear and brief in support of same which has been carefully examined. We find no authorities cited or arguments made that were not presented and fully considered heretofore in the determination of the case. ██ In the case of Louisville & N. R. Co. v. United States Fidelity & Guaranty Co., 125 Tenn. 658, on pages 691 et seq., 148 S. W. 671, on page 680, Mr. Justice M. M. Neil, said: ''A petition for rehearing should never be

used merely for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court. The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration. 'During a pretty long period of judicial life,' said Mr. Justice Story, in Jenkins v. Eldredge, Fed. Cas. No. 7,267, 3 Story 299, 'it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important cases, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, influence the duties or judgment of the court. The asservations of counsel, however solemn, have nothing to do with the facts or merits of causes before the court; and if any judge could be so unstable in his views, or so feeble in his judgment, as to yield to them, he would not only surrender his independence, but betray his duty. However humble may be his own talents, he is compelled to treat every opinion of counsel, however exalted, which is not founded in the law and the facts of the case, to be voiceless and valueless. . . . They (rehearings) have been exceedingly rare in this court, I admit, as, in my judgment, they ought to be, unless some plain, obvious, and palpable error, or omission, or mistake, in something material to the decree, is brought to the notice of the court, which had before escaped its attention. But if a rehearing were to be granted upon the mere certificate of counsel, who had argued the cause, that, in their judgment, the decree was erroneous (a certificate which, with great sincerity and readiness, would almost always be given by the counsel),

it is obvious that in the great mass of equity causes of a difficult and important nature, in this court, depending upon conflicting views of law, and also upon conflicting and often irreconcilable evidence, a rehearing would be almost a matter of course; and, considering the vast time occupied hearing such causes, there would be little time left for the court to devote itself to any other business, and the other suitors in the court would suffer the most oppressive delays, and often the most irremediable injustice. . . . If the rehearings are to be had until the counsel on both sides are satisfied, I fear that suits would become immortal, and the decision be postponed indefinitely.' Fed. Cas. No. 7,267, 3 Story 299.''

 We are in full accord with this law and reasoning and having given full consideration to the case as originally presented and determined by the opinion filed November 14, 1942, and no new or unconsidered questions being presented by the petition we are constrained to dismiss it at the cost of petitioner.

Petition to rehear dismissed.

Felts, and Hickerson, JJ., concur.