418 P.2d 537

**H. E. REED, Plaintiff-Appellee and Cross-Appellant,**

v.

**FISH ENGINEERING CORPORATION, Employer, and Continental Casualty Company, Insurer, Defendants-Appellants and Cross-Appellees.**

No. 7866.

Supreme Court of New Mexico.

Sept. 6, 1966.

Rehearing Denied Oct. 13, 1966.

Adams & Pongetti, Albuquerque, for appellant.

Palmer & Frost, Farmington, for appellees.

## OPINION

JOE W. WOOD, Judge, Court of Appeals.

This is the second appeal in this workmen's compensation case. For the first appeal see 74 N.M. 45, 390 P.2d 283. In this appeal defendants raised three issues: (1) there is no evidence to support a finding under § 59–10–14, N.M.S.A.1953; (2) a compensation award to plaintiff for a 1962 injury should be deducted from the partial

permanent disability award in this case; and (3) the allowance for attorney's fees is excessive. By cross-appeal plaintiff asserts that the allowance for attorney fees is inadequate.

Plaintiff was injured at Aneth, Utah, on July 29, 1959. His claim was filed October 12, 1961. The trial court found that there was conduct on the part of the defendants that reasonably led plaintiff to believe that compensation would be paid. The trial court concluded that plaintiff was not deprived of his right to compensation although the suit was not filed within the time prescribed by the Workmen's Compensation Act. The trial court awarded temporary total and partial permanent benefits and credited against this award the compensation payments previously made by defendants under Utah law.

The first issue is whether there is evidence to support the trial court's application of § 59–10–14, N.M.S.A.1953. If such evidence is lacking, then the claim is barred by § 59–10–13.6, N.M.S.A.1953. Section 59–10–14 reads:

"The failure of any person entitled to compensation under the Workmen's Compensation Act [59–10–1 to 59–10–37] to give any notice, file any claim, or bring suit within the time fixed by the Workmen's Compensation Act shall not deprive such person of the right to compensation where the failure was caused in whole or in part by the conduct of the employer or insurer which reasonably led the person entitled to compensation to believe the compensation would be paid."

Defendants paid compensation from date of injury to June 2, 1960. From June 2, 1960, to November 9, 1960, there was conduct on the part of defendants which would reasonably lead plaintiff to believe compensation would be paid. From November 9, 1960, to August 7, 1961, defendants again paid compensation. The payments were at the rate of $37.00 per week and were under the Utah law.

Defendants assert that their conduct must have reasonably led the plaintiff to believe that compensation would be paid under the New Mexico Workmen's Compensation Act. They point out that plaintiff never did say that he thought the payments were being made under New Mexico law. They claim that § 59–10–14, N.M.S.A.1953, cannot apply if plaintiff did not believe it was New Mexico compensation that was being paid.

This first issue is controlled by the opinion on the first appeal since that opinion is the law of the case. Albuquerque Broadcasting Co. v. Bureau of Revenue, 54 N.M. 133, 215 P.2d 819.

In the first appeal we reversed the partial summary judgment which held that plaintiff's claim was barred under § 59–10–13.6, N.M.S.A.1953. The opinion states:

" * * * [T]he question which we must determine is whether a material issue of

fact was present concerning whether payments were made under Utah law, and if so did they effect a waiver or estoppel of claimant to any right to claim benefits under the New Mexico law? We are clear that an issue of fact was present, and that the affidavits before the court prior to trial could reasonably raise an inference which would have supported a finding that payments were not made or knowingly received under the Utah law so as to bar this action. * * *"

And further:

"We are satisfied that if the facts are as claimed by plaintiff, payments made and accepted could just as effectively lull claimant into a reasonable feeling of security as to his being entitled to compensation under New Mexico law as would continued voluntary payment of wages, and would accordingly be conduct excusing the filing of the claim within one year after the right to compensation arose. See Ritter v. Albuquerque Gas & Electric Co., 47 N.M. 329, 142 P.2d 919, 153 A.L.R. 273. This is in strict accord with § 59–10–14, N.M.S.A.1953. On remand for the error in deciding the issues on summary judgment, §§ 59–10–13.6 and 59–10–14, N.M.S.A.1953, should be applied as herein explained."

■ Thus, on remand, the issue to be decided by the trial court was whether the facts were as claimed by the plaintiff. This application of the law of the case is set forth in Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231:

"It was held by this court on the first appeal that the allegations above recited stated a cause of action, * * *

"* * * If facts proved establish the above allegations, then the plaintiff is entitled to recover, whether the law of the case, as we have stated it in the first opinion, is right or wrong * * *."

The facts proved at the trial went further than those claimed by plaintiff in the affidavit. The claim made by the affidavit is that compensation was voluntarily paid and voluntarily accepted, that there had not been a failure or refusal to pay compensation for a year or more prior to filing of the complaint, that part of the compensation payments were mailed to him from Salt Lake City and part were mailed to him by the adjuster in Farmington, New Mexico, and that he never presented a claim to or made an appearance before the Utah Industrial Commission. These facts are established by the evidence.

The trial court's application of § 59–10–14, N.M.S.A.1953, is supported by the following additional facts. Plaintiff didn't know under which act the compensation was paid and didn't know there was a difference between the New Mexico and Utah acts until some time in 1962 when he was so informed by his attorney. Plaintiff didn't

realize there was a problem, and while compensation was being paid he "rested easy." Plaintiff testified there was no indication from anyone that he would not receive compensation under the New Mexico act.

At all times material plaintiff resided in New Mexico. He was hired in New Mexico for the job on which he was injured. He received medical treatment in Farmington, New Mexico, and his first back operation was performed by an Albuquerque surgeon.

The insurer provided compensation coverage for employer in both New Mexico and Utah. By a letter dated January 17, 1961, the defendant employer specifically pointed out to plaintiff that the defendants were paying compensation under the Utah act. Plaintiff acknowledged that he received and read this letter.

▮ Prior to receipt of the letter in January 1961 the above facts support an inference that the payments were not knowingly received under the Utah law so as to bar the action. The conduct of defendants having lulled plaintiff into a feeling of security as to his being entitled to compensation under New Mexico law, their conduct excused plaintiff's failure to file the claim within one year after the right to compensation arose. The law of the case is that such conduct by defendants meets the requirements of § 59–10–14, N.M.S.A.1953.

▮▮ After receipt of the January 1961 letter, plaintiff could not have had "a feeling of security" as to New Mexico compensation. The letter clearly stated the position of defendants—that entitlement to compensation was under Utah law. The limitation period for filing his claim began to run from receipt of that letter. The complaint, filed October 12, 1961, was in time. See Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572.

▮ In July of 1962 plaintiff suffered an injury to his low back in the same area that was injured while working for defendant employers on July 29, 1959. For the 1962 injury plaintiff was paid temporary total compensation benefits of $2,052.00 and received a lump sum settlement of $3,800.00. Defendants' second issue is that this $3,800.00 should be deducted from the award of 50% partial permanent disability in this case. Defendants assert that the permanent partial disability that he now suffers is the same permanent partial disability resulting from the 1962 accident.

The trial court refused defendants' requested finding that plaintiff's partial permanent disability as of the time of trial was the same disability which followed the 1962 accident; refused to find that the current disability was due in part to the 1962 injury and refused to conclude that the $3,800.00 settlement for partial permanent disability should be deducted from the amount of partial permanent disability in this case.

The trial court found that plaintiff's disability was proximately caused by the 1959 injury, that this disability was 50% and that plaintiff's impaired physical condition was medically a result of the 1959 accident even though the condition had been complicated by the 1962 injury.

There is evidence to support the trial court's findings. Dr. Schultz was of the opinion that plaintiff had a 50% disability to the body as a whole, that this disability was a consequence of the 1959 injury and the 1962 injury did not alter this disability. Dr. Smith treated plaintiff for the 1962 injury. Dr. Smith testified that he couldn't tell for sure to what injury the disability was to be attributed. Dr. Smith admitted, that in one of his written reports, he indicated that there was no impairment resulting from the 1962 injury.

Since the disability awarded was for the 1959 injury, there is no factual basis on which to apply a deduction. Defendants assert that plaintiff should not be paid twice for the same disability. The findings are to the effect that he is not being so paid. Defendants assert that plaintiff could have still another accidental injury to the same area previously injured and would be able to collect more than 100% due to his disability. We do not decide whether an injury to the "same area" would be an injury to the "same member or function." If, as a fact, they are the same, § 59–10–18.8(D), N.M.S.A.1953, answers this contention.

Defendants' third issue is that the allowance of $2,600.00 to plaintiff's attorney is excessive and should not have been based in part on services performed in connection with the prior appeal. While plaintiff's attorney referred to services performed in the prior appeal in setting forth the claim for attorney fees, nothing in the record indicates that the trial court considered the prior appeal in setting the fees.

The trial court found that $2,600.00 was a reasonable attorney fee "in this action." Section 59–10–23, N.M.S.A.1953, allows the trial court to set fees which "the court may deem reasonable and proper." The record in this case shows a hearing on defendants' motion for summary judgment and two trials. The proceedings show the claim was contested on the issues of employment in New Mexico, filing of the claim within the proper time, the extent of disability and the recovery for certain medical bills.

There was no abuse of discretion by the trial court in setting the attorney fee. Garcia v. J. C. Penney Co., 52 N.M. 410, 200 P.2d 372.

Plaintiff cross-appeals, claiming the award of $2,600.00 is inadequate. We cannot state, as a matter of law, that the fees are inadequate. The amount of fees awarded is discretionary with the trial court, subject to the provisions of § 59–10–23, N.M.S.A.1953.

The judgment is affirmed with an additional award to plaintiff of $1,000.00

for the services of his attorney in representing him in this appeal. It is so ordered.

MOISE and COMPTON, JJ., concur.

CARMODY, C. J., and LaFEL E. OMAN, J., Court of Appeals, dissent.

LaFEL E. OMAN, Judge, Court of Appeals (dissenting).

I am unable to agree with the majority of the court in the disposition they make of the first point, which is that the plaintiff's claim for workmen's compensation benefits, aside from medical benefits, is not barred by the provisions of § 59–10–13.6, N.M.S.A. 1953.

The majority dispose of the first issue, and in particular dispose of the question of the applicability of the provisions of § 59–10–14, N.M.S.A.1953 to the facts of this case, by stating that this issue is controlled by the opinion on the first appeal, since that opinion is now the law of the case. They then quote from the opinion on the first appeal, and conclude, "Thus, on remand, the issue to be decided by the trial court was whether the facts were as claimed by the plaintiff."

The affidavit to which they refer was made by plaintiff on April 5, 1962, and was before this court as a part of the record on the prior appeal. I am of the opinion that the matters proved on the trial fall short of establishing the facts to be as claimed by plaintiff in his affidavit.

I am also of the opinion that the matters proved on the trial fall far short of demonstrating that plaintiff's failure to file his claim within one year, as expressly required by the provisions of § 59–10–13.6, N.M.S.A.1953, " * * * was caused in whole or in part by the conduct of the employer or insurer [defendants] which reasonably led the person entitled to compensation [plaintiff] to believe the compensation [compensation under the New Mexico act] would be paid." Such causal conduct on the part of defendants, and such reasonable belief on his part, is required by § 59–10–14, N.M.S.A.1953, before plaintiff can be excused from his failure to timely file his claim.

I have no argument with the principle that once this court has ruled on the applicable law in a particular case, this ruling then becomes the law of the case, even though the ruling be wrong. Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231. In my opinion the ruling of this court on the prior appeal was wrong, insofar as the same is quoted above in the majority opinion, if that ruling means what the majority now contends it means.

I cannot agree with the majority that the ruling on the prior appeal commits us here to the conclusion that the conduct of defendants, in whole or in part, reasonably led plaintiff to believe compensation under the New Mexico law would be paid to him. The payment of compensation under the

Utah law, coupled with a lack of knowledge and a lack of concern on plaintiff's part as to whether he was being paid under the Utah or the New Mexico law, the fact that no one ever indicated to him that he would not receive compensation under the New Mexico law, and the other matters recited by the majority, do not constitute such conduct on the part of defendants.

The plaintiff's complaint, which is the only complaint he filed and the only one before this court on both appeals, is a complaint for workmen's compensation benefits under the New Mexico act. In his affidavit of April 5, 1962 he stated:

" *  *  *, That the defendants paid to him compensation at the rate of $37.00 per week from the date of his injury up to and including June 2, 1960, at which time said weekly payments were discontinued; that thereafter and on November 29, 1960, the weekly payments were again made by the defendants and continued up to and including August 7, 1961; *  *"

An affidavit filed by defendants in support of their motion for summary judgment asserted that the compensation benefits were paid to plaintiff under the Utah compensation act, and that no payments had ever been made to him under the New Mexico compensation act. After remand by this court, the trial court found that the payments were made under the Utah act, and there is now no question about this being so. The compensation acts of no states other than Utah and New Mexico are in any way involved.

Thus, the plaintiff, in stating that the defendants had paid to him compensation, could only have meant compensation under the New Mexico act. Obviously, this court so interpreted his affidavit on the prior appeal. Otherwise there could be no reason for the language in the prior decision quoted by the majority as follows:

" *  *  * [T]he question which we must determine is whether a material issue of fact was present concerning *whether payments were made under Utah law,* *  * We are clear that an issue of fact was present, and that the affidavits before the court prior to trial could reasonably raise an inference which would have supported *a finding that payments were not made or knowingly received under the Utah law so as to bar this action.* *  *"* (Italics added for emphasis)

The defendants were contending by their affidavit in support of their motion for summary judgment that claim was made and compensation benefits paid to plaintiff under the Utah compensation act, and that no payments had ever been made to plaintiff under the New Mexico compensation act. If there was an issue as to "whether payments were made under the Utah law," and this is precisely what was held by this court in the prior opinion, then this issue of necessity had to be raised by the plaintiff's affidavit, and the compensation, which he said

he had received, of necessity had to mean compensation under the New Mexico act. Thus, when the trial court found that compensation had been paid under the Utah act, the contention of the defendants in this regard, and not the contention of the plaintiff, was found to be true. How, then, can the majority now correctly hold that the facts were as claimed by the plaintiff in his affidavit?

The language of the prior opinion, suggests that if compensation had been paid under the Utah law, but plaintiff had no knowledge of such, then his failure to timely file his suit was caused in whole or in part by the conduct of defendants which reasonably led him to believe compensation under New Mexico law would be paid. However, since the court in the prior opinion held there was an issue of fact as to "whether payments were made under the Utah law," and since this issue could only have been raised by the contention of plaintiff that the payments were made under the New Mexico law, the language of the prior opinion must be viewed in the light of this stated issue.

That portion of the opinion in the prior case, now relied upon by the majority, states in part as follows:

"We are satisfied that if the facts are as claimed by plaintiff, [as above demonstrated this claim was that compensation had been paid under the New Mexico law] payments made and accepted could just as effectively lull claimant into a reasonable feeling of security as to his being entitled to compensation under New Mexico law as would continued voluntary payment of wages, and would accordingly be conduct excusing the filing of the claim within one year after the right to compensation arose. * * *"

I agree that if the payments of $37.00 per week had been paid under the New Mexico law, even though he was entitled to $38.00 per week, or that the defendants had told plaintiff he was being paid under the New Mexico law, when in fact he was being paid $37.00 per week under and as provided by the Utah law, then either the actual voluntary payments of $37.00 per week under the New Mexico law, or the false representation to him that he was being paid under the New Mexico law, would have constituted conduct on the part of defendants which, in whole or in part, could reasonably have led him to believe compensation would be paid under the New Mexico law.

But the truth is he was paid compensation under the Utah law, and at no time did the defendants, or either of them, suggest to him that he was being paid under the New Mexico law. All he says is that he did not know under which law he was being paid, that he was not concerned, so long as payments of $37.00 per week were being made to him, and that there was no indication from anyone that he would not receive compensation under New Mexico law. To now hold that there was conduct on the part of

defendants, which in whole or in part, reasonably led him to believe that compensation would be paid to him under the New Mexico law, is to say the defendants had the burden of expressly informing the claimant that he was not being paid under the New Mexico law, even though the surrounding facts and the amount of the compensation payments clearly so indicated, and is to completely disregard the statutory requirement that he must, in whole or in part, have been reasonably led to believe that compensation would be paid to him under the New Mexico law.

A belief implies some mental conclusion or conviction arrived at by evidence received, information gained, inferences deducible from knowledge or information, or by some mental process, and is not consistent with a tabula rasa. Here the plaintiff's testimony was merely that he didn't know under what law he was being paid, he was not concerned so long as he received $37.00 per week, and no one had indicated he would not be paid under New Mexico law. This just is not consistent with a belief that he would be paid compensation under the New Mexico law, and particularly is not consistent with a reasonable belief that he would be so paid.

In distinguishing between "belief" and its synonyms, Webster's Third New International Dictionary Unabridged states:

"Belief signifies mental acceptance of or assent to something offered as true, with or without certainty. * * *"

See also the definitions in Bouvier's Law Dictionary, 3rd Ed.; Black's Law Dictionary 4th Ed.; Webster's Third New International Dictionary Unabridged; 10 C.J.S. Belief, at 236 and Believe, at 238; Brooks v. Sessoms, 47 Ga.App. 554, 171 S.E. 222, 224; Cook v. Singer Sewing Mach. Co., 138 Cal.App. 418, 32 P.2d 430, 431; Leathers v. Sikeston Coca-Cola Bottling Co., 286 S.W. 2d 393 (Mo.App.1956); State v. Smith, 22 N.J. 59, 123 A.2d 369, 371; Boone v. Merchants' & Farmers' Bank, 285 F. 183, 191 (D.C.N.C.1922).

The belief which must exist subjectively in the mind of a claimant, in order to bring him within the provisions of § 59–10–14, N.M.S.A.1953, must be a mental conviction or conclusion that he will be paid compensation under the New Mexico law, and it must be gained, at least in part, by the application of reason to the conduct of the employer or insurer.

The word reasonable, although difficult of precise definition, means that which is consistent with reason, like thinking, and good judgment. See Webster's Third New International Dictionary Unabridged; Bouvier's Law Dictionary, 3d Ed., Vol. II; Black's Law Dictionary, 3d Ed.; 75 C.J.S. Reasonable at 634; Anderson v. St. Louis-San Francisco Ry. Co., 367 S.W.2d 657, 660 (Mo.App.1963).

Conduct, which reasonably causes a claimant to believe compensation will be paid, must be such conduct as would induce a conclusion or conviction to this effect in

the mind of an ordinarily intelligent and reasonable person. For definitions of "reasonable cause to believe" see Putnam v. United States Trust Co., 223 Mass. 199, 111 N.E. 969, 972; Carroll v. Holliman, 336 F.2d 425, 428 (10th Cir.1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795; Woolard v. Ferrell, 26 Tenn.App. 197, 169 S.W.2d 134; Cook v. Singer Sewing Mach. Co., supra.

I find no case by this court defining "reasonable" or "reasonable belief." A reference to the above quotation from the opinion on the prior appeal shows we did talk of a reasonable inference, and in the cases of Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640 and Bolt v. Davis, 70 N.M. 449, 374 P.2d 648, we have defined "reasonable inference" as follows:

> "A reasonable inference may be defined as a process of reasoning whereby, from facts admitted or established by the evidence, or from common knowledge or experience, a reasonable conclusion may be drawn that a further fact is established.
>
> \* \* \* \* \* \*
>
> "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved \* \* \* and guess work is not a substitute therefor."

See also Posey v. Dove, 57 N.M. 200, 257 P.2d 541.

An inference is defined in Webster's Third New International Dictionary Unabridged as follows:

> "1. the act or process of inferring: the act of passing from one or more propositions, statements or judgments considered as true to another the truth of which is believed to follow from that of the former. \* \* \* 3. the premises and conclusion that represent a process of inferring or that form the determinants of a belief. \* \* \*"

Admittedly, the terms "belief," "reasonable," "reasonable cause," and "reasonable cause to believe" are difficult of precise definition and their definitions often vary with the circumstances of their application. Considering this fact, and further considering the fact that we have repeatedly held that the workmen's compensation act is to be liberally construed and all reasonable doubts resolved in favor of the employees, we still cannot escape the fact that the plaintiff had to show that his failure to bring his suit within one year, as provided by § 59–10–13.6, N.M.S.A.1953, was caused, in whole or in part, by conduct of the defendants which "reasonably led him to believe" that compensation under the New Mexico act would be paid.

In order to succeed, the plaintiff must have had some conviction of mind, firm or otherwise, that he would receive workmen's compensation benefits under the New Mexico act. Otherwise, he had no belief. He also had to have reasonably gained this conviction, at least in part, from conduct of the defendants. Because a belief is a subjective state of mind, the only ways of

determining a person's belief on a matter is to accept what he says, or, in the absence of an expression by him of his belief, to perhaps gain such from his conduct.

Here the plaintiff's sworn testimony negatives any belief on his part that he would receive compensation under the New Mexico law. He just did not give the matter a thought, until he consulted an attorney some time in 1962.

For the reasons stated herein, I would reverse the judgment of the trial court, except for the claim for medical expenses about which no issue is presented.