474 P.2d 1016

James E. DRURY, Appellant, and Cross-Appellee,

v.

Waldon V. BURR, Sheriff of Pima County, State of Arizona, Appellee, and Cross-Appellant.

No. 2 CA–CIV 892.

Court of Appeals of Arizona, Division 2.

Oct. 7, 1970.

Rehearing Denied Oct. 28, 1970.
Review Granted Dec. 22, 1970.

question the sufficiency of the evidence supporting the finding of probable cause. State v. Abbott, 103 Ariz. 336, 442 P.2d 80 (1968).

Our Arizona Supreme Court has defined probable cause to mean that there is more evidence for, rather than against, a defendant's guilt, and "there must exist such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused." Rendel v. Mummert, Ariz., 474 P.2d 824, 829 (No. 10045 filed September 29, 1970); Dodd v. Boies, 88 Ariz. 401, 357 P.2d 144 (1960). If the evidence creates nothing more than a mere suspicion that a defendant is guilty of the offense for which he is charged, it does not suffice to meet the test of probable cause. Dodd v. Boies, supra.

Howard A. Kashman, Pima County, Public Defender, Tucson, for appellant and cross-appellee.

Rose Silver, Pima County Atty., by William F. McDonald, Deputy County Atty., Tucson, for appellee and cross-appellant.

HOWARD, Chief Judge.

The appellant, after a preliminary examination in justice court, was bound over to superior court to answer a charge of murder, unspecified degree. He filed a petition for a writ of habeas corpus in superior court, alleging as grounds for relief that the State had failed to produce sufficient evidence to support the committing magistrate's finding of probable cause. He also alleged that he was being wrongfully held without bond. The superior court entered a formal written order setting bond in the sum of $25,000.00 and denying all other relief. Both petitioner and respondent in the habeas corpus proceedings have appealed this order; the latter as to the provision for bail and the petitioner from the remainder thereof.

Where, as here, appellant was in custody, habeas corpus was appropriate to

In habeas corpus proceedings, it is appropriate to examine the evidence submitted at a preliminary hearing before a committing magistrate to determine if there was evidence presented tending to show that a public offense had been committed and if there was probable cause to believe the accused committed it. Martinez v. State, 90 Idaho 229, 409 P.2d 426 (1965).

The determinative issue here is whether the evidence adduced at the preliminary hearing supports a prima facie showing of the corpus delicti of the offense with which appellant was charged. The term "corpus delicti" means that the crime charged has been committed. State v. Hankey, 98 Ariz. 104, 402 P.2d 418 (1965). The corpus delicti in a murder case consists of (1) the fact of death and (2) the fact that death was caused by the criminal agency of some person. People v. Jones, 22 Ill.2d 592, 177 N.E.2d 112 (1961); Beasley v. Lamb, 79 Nev. 78, 378 P.2d 524 (1963). In a proceeding charging murder, the State must offer evidence in proving the corpus delicti to establish affirmatively that the death was the result of the crimi-

nal agency of another. If, in considering all the evidence admissible upon the element of corpus delicti, it cannot be said there was sufficient evidence to make it appear the death resulted from another's criminal agency, the State has failed in its burden and the person charged may not be held to stand trial on that charge. Azbill v. State, 84 Nev. 345, 440 P.2d 1014 (Nev.1968); Iiams v. Superior Court, 236 Cal.App.2d 80, 45 Cal.Rptr. 627 (1965).

■ At the preliminary hearing the State did prove the fact of the victim's death. We believe, however, that it failed to establish the fact of criminal agency. Although the State need not eliminate all non-criminal inferences, there must be an inference of criminal agency even if there are also equally plausible non-criminal explanations. People v. Jacobson, 63 Cal.2d 319, 46 Cal.Rptr. 515, 405 P.2d 555 (1965).

The only evidence adduced at the preliminary examination as to the cause of the victim's death was the testimony of Dr. Brucker, a licensed physician specializing in pathology, who had performed the autopsy on the victim's body. He testified:

\* \* \* \* \* \*

"External examination at this time showed multiple abrasions on the face, particularly on the left side. Both eyes were black and blue. The left side—on the left side of his face the cheek and the jaw were smashed. There were multiple fractures on both the maxilla and mandible. There were numerous abrasions across the lower jaw and upper portion of the chest. These were large abrasions running in like almost tracks across the upper portion of the body. There were multiple lacerations on the right hand. The left hand showed a fracture of the fourth finger. There were multiple abrasions and lacerations of the left hand. That was the external.

Internal examination showed a fracture of the first rib. There was some hemorrhage in the lung cavity. The lungs themselves showed areas of hem-

orrhage. There was hemorrhage in the anterior chest, called the anterior mediastinum. The tracheobronchial tree was filled with a thick, pasty, grayish food-like material, which was also present in the stomach, or gastrointestinal tract. The remaining organs were reasonably normal for a man of this age. The central nervous system. There were the fractures we described on the jaw. On reflecting the scalp there were areas of hemorrhage noted in the scalp in the left frontal side of the scalp. There was an old area of encephlomalacia on the temporal lobe. Other than that, there were no other areas of hemorrhage or skull fractures noted."

\* \* \* \* \* \*

The prosecuting attorney asked him whether he was able to form an opinion as to the cause of death of the victim to which he responded in the affirmative and stated:

"Suffocation due to expiration [sic] of gastric contents associated with multiple fractures of the jaw."

He expressed an opinion as to how the jaw was fractured; that it was the result of a traumatic injury of some kind, probably done by an instrument. Then the following direct examination ensued:

"Q. When a person has a fractured jaw of the nature that Hoskins Foster did, is he able to open his mouth?

A. No, sir.

Q. Would be be able to swallow?

A. He would have difficulty.

Q. If he were to regurgitate, would he be able to rid the contents with this regurgitation or vomit?

A. It's awful difficult to say whether he would have been able to or not, because the man would have been dead. All I could say is he would have had difficulty.

Q. Is that the reason why you list the cause of death as associated with the jaw?

A. Yes, sir, he had two problems here, and I can't separate the two."

On cross-examination, the doctor testified:

"Q. You have used the word 'associated' in your probable cause of death as aspiration associated with multiple fractures. By this am I correct in saying that, having found two conditions in an individual who has died, therefore these are associated in his death?

A. Yes, sir.

\* \* \* \* \* \*

Q. Okay. Do you feel that you can say that the injury to the jaw caused this man to vomit and therefore suffocate on that?

A. It could have.

Q. It could have. Do you feel that there is any immediate certainty or that with medical certainty you can say that it did?

A. No, I can't with medical certainty. All I can say is people with fractured bones frequently vomit. This is a fact. Whether this man did or did not, I don't know.

Q. In other words, it is possible that one was the cause of the other?

A. Yes, sir.

Q. But you can't say with any certainty that it was?

A. That's correct."

The doctor testified as to the alcoholic content of the victim's blood, indicating that he had been in a fairly intoxicated state. When asked whether it was just as possible that the victim vomited from his intoxicated state as from his trauma, the doctor responded in the affirmative. On re-direct, this subject was further explored:

"Q. You testified that a person with the amount of ethyl alcohol content as the deceased had would vomit, is that right?

A. No. I said he could.

\* \* \* \* \* \*

Q. But as to this particular person there is no medical certainty that that was the reason why he vomited?

A. No, sir."

At first blush it would appear that the doctor expressed an opinion that a causal relationship existed between the aspiration and the multiple fractures by use of the words "associated with." However, when questioned as to the meaning of the words, he stated that he meant only that he had found two conditions in the deceased victim and therefore they were "associated" in his death.

▮▮▮▮▮ The doctor was not asked his opinion as to whether the aspiration of the gastric contents was causally related to the jaw fractures. He stated only that the injury "could have" caused the vomiting. He also admitted that the victim's intoxication "could have" caused the vomiting. The whole tenor of his testimony is couched in terms of "possibility" rather than "probability." Testimony indicating the possibility or chance of the existence of a causal relation, without more, is insufficient to establish such relation. See Coca-Cola Bottling Company of Tucson v. Fitzgerald, 3 Ariz.App. 303, 413 P.2d 869 (1966); Ideal Food Products Company v. Rupe, 76 Ariz. 175, 261 P.2d 992 (1953); Annot. 135 A.L.R. 516 et seq., 31 Am.Jur. 2d Expert and Opinion Evidence § 44. We hold that this evidence is too conjectural to support an inference that death was caused by a criminal agency.

▮▮▮ At a preliminary hearing on an open murder complaint, it must be demonstrated to the magistrate by legal, competent evidence that the offense has been committed. Miner v. Lamb, 464 P.2d 451 (Nev. 1970); 22 C.J.S. Criminal Law § 345a. There being no legally competent evidence to support an inference that the victim's death was probably caused by a criminal agency, the trial court erred in

**168**

finding the evidence presented by the State sufficient to hold appellant to answer a charge of murder.

In view of our disposition of the appeal, we consider it unnecessary to consider the issue raised by the State's cross-appeal.

The order denying relief to appellant is hereby reversed and the cause is remanded for such further proceedings not inconsistent herewith.

HATHAWAY and KRUCKER, JJ., concur.